128 So.2d 174 (1961)
Dr. J.A. MEASE, Jr., Appellant,
v.
WARM MINERAL SPRINGS, INC., formerly Warm Salt Springs, Inc., a Florida corporation, Appellee.
No. 1761.
District Court of Appeal of Florida. Second District.
March 1, 1961.
*175 McLean & McLean, Tampa, and Askew, Earle & Hawes, St. Petersburg, for appellant.
Lynn N. Silvertooth, Sarasota, and Fowler, White, Gillen, Humkey, & Trenam, Tampa, for appellee.
KANNER, Judge.
As the result of a suit commenced in 1957 to rescind and cancel a deed of conveyance, the court entered a final decree favoring the plaintiff, Warm Mineral Springs, Inc. Appeal from the decree is brought by the defendant, Dr. J.A. Mease, Jr.
The plaintiff corporation, Warm Mineral Springs, Inc., before purchase of the stock by Frederick M. Daley, bore the corporate name of Warm Salt Springs, Inc. That corporation was engaged in the business of developing a large spring and in selling lots and homesites located in its environs. Pursuant to contract and corporate resolution, it conveyed about five acres of land adjacent to the spring to Dr. Mease, who was at the time an officer, director, and stockholder of the corporation, as well as a member of the management committee. The transfer was made free and clear of encumbrances but subject to an obligation on Dr. Mease's part, either to construct a therapeutic clinic upon the land, or to begin substantial construction within twelve months from the date of the deed.
Title to about 748 acres of land upon which the spring was located was vested in Warm Salt Springs, Inc. The corporation was controlled by Leo Scharf and his wife, Margarete Scharf, who in 1954 approached Dr. Mease concerning the possibility of constructing the clinic referred to, their aim being to enhance the property and expedite its development. As a result, Dr. Mease, the Scharfs, and one H.W. Meyer entered into a written contract dated October 26, 1954, for the purpose of developing the property.
Paragraph nine of the contract delineated the terms under which Dr. Mease was to be entitled to the lands conveyed. Included was the obligation whereby Mease was to surrender the exclusive privileges accorded him under the instrument, together with any claim or demand for the conveyance of land, in the event the clinic described was not built or substantially started within twelve months.[1]
*176 The by-laws of Warm Salt Springs, Inc., provided that the president was empowered to sell, mortgage, or convey real estate, pursuant only to authorization by resolution of the board of directors. At a meeting of the board of directors held on November 10, 1954, such a resolution authorizing the conveyance to Dr. Mease was duly passed;[2] and thereupon the land was deeded to him on May 4, 1955, by warranty deed. That instrument of itself passed to Dr. Mease title in fee simple, with no provision for reversion, condition subsequent, or possibility of reverter, but with a covenant that Dr. Mease would have exclusive use of the waters for therapeutic purposes. There was no consideration for the deed other than Dr. Mease's promise to erect the proposed clinic or start it within the time specified.
Negotiations for the sale of all the corporate stock to Frederick M. Daley were set in motion in the latter part of that same year. At Daley's request Dr. Mease wrote a letter to Leo Scharf dated September 26, 1955, providing additional information concerning the proposed clinic and stating conditions under which Mease would construct it.[3] The Scharfs, together *177 with an escrow agent acting for the other stockholders, on October 1, 1955, entered into an agreement with Daley for sale of the stock to him for $300,000.00, including the 25% interest of Dr. Mease in the corporation. Under paragraph five it was provided that "This contract is subject to the grant of exclusive medicinal therapeutic rights by Corporation to Dr. J.A. Mease, Jr" and under paragraph nine, the contract provided as follows:
"Sellers further warrant that the assets and liabilities of the Corporation, as reflected in said statements, are true and correct, with the understanding that those reflected in Schedule `A' attached hereto have been fully disclosed to Purchaser and are to be considered as to ultimate consequence in connection with such statements."
Schedule "A" of the contract as referred to under paragraph nine contained the following with reference to the contract with Dr. Mease, the deed, and the letter of September 26, 1955:
"Contract with Dr. J.A. Mease, Jr. dated October 26, 1954, and Warranty Deed dated May 4, 1955, and letter dated the 26th day of September, 1955, which clarifies the agreement originally entered into between the corporation and Dr. J.A. Mease, Jr."
On September 30, 1955, the directors held a special meeting at which, upon motion duly made and seconded, all acts of the officers and management of the corporation, all transfers of real property, financial transactions, and books of account to that date were approved and confirmed.
After Daley had bought all the stock, the plaintiff corporation, through a letter to Dr. Mease on February 21, 1956, extended the time for erection of the clinic to July 31, 1956. On August 1, the day following the termination date of the extension, the plaintiff corporation demanded of Dr. Mease a reconveyance of the property based on his failure to fulfill the requirements of the agreement with reference to building the clinic.
It is contended by the plaintiff that it conveyed the lands on May 4, 1955, in reliance on the promise and agreement of the defendant to construct the clinic, that the plaintiff had complied with its part of the agreement but that the defendant failed to fulfill his obligation. Dr. Mease was charged by the corporation with unjust enrichment and breach of confidence and trust through failure to comply with the agreement concerning construction of the proposed clinic.
Admitting the written agreement, the corporate resolution, and delivery of the deed, Dr. Mease asserts, however, that both the agreement and corporate resolution were subsequently modified. He contends that, by the modification of the agreement, construction of the clinic depended upon access to and from its proposed site through extension of the paving of Muscogee Road around the clinic grounds to Ortiz Boulevard and that this was to have been done by the corporation prior to commencement of the construction. Dr. Mease has counterclaimed, urging that the corporation as the alter ego of Daley should be required to specifically perform the claimed agreement to extend the paving of Muscogee Road.
At the trial, all the stockholders of the corporation testified except the Scharfs and another, who was ill; and their testimony indicated that they all knew and approved of the deed to Dr. Mease. One former director and officer testified that the letter of September 26, 1955, from Dr. Mease to Scharf accurately reflected the agreement with the other stockholders and directors concerning construction of the clinic. On this, plaintiff admits that the deed was to be given, but disputes the claimed modification.
In the final decree, the court found that the agreement referred to was entered into upon the condition that the defendant build or substantially start the construction of a therapeutic clinic within twelve calendar *178 months of the date of the conveyance; that by corporate resolution of November 10, 1954, and subsequent deed of May 4, 1955, the land involved was conveyed to Dr. Mease, together with certain therapeutic use rights, "subject to the condition that such delivery and conveyance was to be of no effect in the event that defendant should not build, or substantially start the construction of, said therapeutic clinic within twelve (12) calendar months from the date of said deed"; and that the deed was authorized, executed, and delivered by plaintiff for the purpose of developing the area. The Court also found that no competent and convincing evidence had shown any agreement originally by the corporation with Dr. Mease to pave any road or roads providing access to the clinic land nor any subsequent amendment or modification of the original agreement to provide that the corporation should do so. Instead, the court found that there were adequate roads for ingress and egress and that the defendant, although requested to do so, had failed to build or substantially start construction of the clinic. It was then held that the defendant had not shown fairness and honesty in his dealings with the corporation to which, as a director, he owed a fiduciary duty; and that subsequent to October, 1955, the plaintiff had expended over $500,000.00 in the development of the Warm Mineral Springs area. The court decreed that the land be reconveyed to the plaintiff and, if not done within five days, that the decree should operate as a conveyance.
Principally, the question is whether there had been a modification of the contract and corporate resolution to extend the time for constructing the clinic until the corporation had paved Muscogee Road around the clinic grounds to Ortiz Boulevard. Dr. Mease, insisting that there had been, stresses his letter of September 26, 1955, and the reference to it in Schedule "A" heretofore quoted as having constituted, in effect, a confirmation of the claimed modification. He asserts that at the time he accepted the deed there had been an agreement by way of a condition precedent that the road would be paved by the corporation, stating at page fourteen of his reply brief, with reference to the letter above referred to, that he made no new agreement but "merely confirmed what the agreement had been between him and the corporation when the deed was delivered to him."
It can be said, however, that the record is lacking both in testimony and documentary evidence to show official action changing the original specified condition for construction of the clinic. Some of the testimony showed a tacit understanding among stockholders and possibly directors that the clinic would not have to be built until after the corporation had paved the road mentioned. This tacit understanding was not reflected in any corporate action or even presented for action. Certainly, there was no official act of the directors and officers of the corporation to modify the written contract and resolution that authorized the deed of conveyance; the action of the directors in approving prior conveyances by the officers just before the shareholders sold the stock to Daley contained nothing by way of modification of the condition under which the conveyance to the defendant was made. In fact, at that time, the period specified for construction of the clinic had not run and the condition was still good; so the approval of the conveyance was consistent with the condition. Additionally, we note that there has been no mention or showing whatsoever of any consideration on Mease's part to betoken any such subsequent modification. Instead, it appears that Mease claims the benefit of a modification, with ownership of the property and therapeutic rights, meanwhile seeking to impose on the corporation for no further consideration an added burden of building roads not agreed upon originally. The only change as to the original time requirement of the contract appears to be that made by the new management of the corporation after sale of *179 the stock in allowing Dr. Mease until July 31, 1956, to fulfill the condition relative to building the clinic.
There is dispute between the parties as to the intent and effect of Dr. Mease's letter of September 26, 1955. There is also conflicting evidence as to reasons for not building the clinic, contradictory to those expressed by Dr. Mease in his letter. The plaintiff, for instance, shows that there were at least two conferences attended by Mease, Daley, and others wherein Mease gave among his reasons for failure to begin construction his inadequate financial position and insufficiency of motels and people in the area to warrant expenditure of money needed for construction and operation of the proposed clinic, with no mention being made that lack of paving the ingress-egress road had deterred him.
We point out that the contract between the stockholders and Daley was not signed on behalf of the corporation, nor was the corporation a party to it. Rather, it was a contract governing sale of the stock of the corporation to an outside purchaser by the individual stockholders themselves. Although the letter of September 26, 1955, from Mease to Scharf was incorporated in that contract through reference in Schedule "A", it must be remembered that in this contract between the stockholders and a purchaser of the stock, there was shown no corporate action modifying the condition of the conveyance to Mease.
A corporation necessarily must act and contract through individuals such as those holding corporate office or agents properly appointed by such officers. 7 Fla.Jur., Corporation, section 252, p. 551; and Browning v. State, 1931, 101 Fla. 1051, 133 So. 847. The board of directors of a corporation represents the corporate body, and the directors are entrusted with authority to conduct and manage the corporate affairs. Generally, the stockholders are without power, aside from that which is delegated to them as agents, to represent the corporation or act for it in relation to its normal business. Although the ultimate control of a corporation resides in its stockholders, generally speaking, in the absence of statutory authority, the stockholders as such cannot act for the corporation either individually or collectively. They cannot make an agreement informally among themselves and thereby bind the corporation. So it is, contracts made by stockholders to whom no authority has been delegated do not bind the corporation unless ratified. 13 Am.Jur., Corporations, section 416, p. 469; 18 C.J.S., Corporations § 495, p. 1171; and Fletcher, Cyclopedia Corporations, Vol. 7, section 3029, p. 100, Vol. 13, section 5736, p. 38. The stockholders do not have vested in them title in the corporate property. Fletcher, Cyclopedia Corporations, Vol. 13, section 5753, p. 53. Since stockholders of a corporation are not its agents, the admissions or declarations of individual stockholders are normally not binding upon the corporation. 19 C.J.S., Corporations § 1072, p. 610; and Fletcher, Cyclopedia Corporations, Vol. 2, section 748, p. 1054. Under proper circumstances, however, the acts of all the stockholders might bind a corporation without official sanction of the corporation's empowered representatives.
It must be recognized that it is the defendant who asserts the modification of the agreement and resolution through which the deed of conveyance was authorized and given. This is an affirmative matter resting upon the defendant to prove. It is clear, therefore, that since there was no corporate action taken to modify the contract as claimed by the defendant, any tacit understanding among stockholders and directors would run counter to the written contract and official corporate resolution and would have no effect. Moreover, after sale of the stock to Daley, the defendant participated in a meeting with him and certain officers of the corporation at which the construction of the clinic was discussed. At that time an extension was granted to Dr. Mease. It is significant that the evidence does not reveal that Dr. Mease made any claim then that he was not obligated *180 to fulfill the condition until an entry road was constructed, but only offered other reasons for the delay and accepted the extension without condition.
Dr. Mease relies upon the statement of a general rule in certain cases to the effect that equity will not order cancellation of a deed because of failure of consideration, particularly where this consists of non-performance of a promise to do some act in the future. See Brinkley v. Arnold, 1929, 98 Fla. 166, 123 So. 569; and Frierson v. Frierson, 1933, 110 Fla. 416, 149 So. 18. Defendant insists that failure to construct the clinic falls into this category. However, relief by way of rescission and cancellation may be granted when failure of consideration consists in a breach of a dependent covenant of the contract. This principle has been invoked in several Florida cases.
In deciding whether or not certain covenants are dependent, the Supreme Court, in the case of Sun City Holding Co. v. Schoenfeld, 1929, 97 Fla. 777, 122 So. 252, stated that the intention of the parties, the ultimate controlling element, in the light of all the circumstances evidenced by the contract, is to be sought for and regarded. In this connection, the court will consider whether the acts contemplated by the covenants are merely subordinate and incidental or whether they go to the entire consideration of the contract; whether the matters relied on by the complaining party amount only to promises or expectations of future events or whether they concern material and dependent acts to be performed concurrently with the covenants of the other party; and the court will also consider all other facts and circumstances from which may be ascertained the intention of the parties.
In a more recent case, that of Steak House v. Barnett, Fla. 1953, 65 So.2d 736, a suit for rescission of a contract which reiterates the foregoing principle, the court pointed out that a covenant is dependent where it goes to the whole consideration of a contract, where it is such an essential part of the bargain that its failure destroys the entire contract, or where it is such an indispensable part of what both parties intended that, had the covenant been omitted, the contract would not have been made.
Concerning the dependency or independency of the covenant involved in the present case, the corporate resolution authorizing the conveyance and the subsequent execution of the deed by the corporation were both pursuant to provisions and conditions of the contract entered into by the Scharfs, Meyer, and Mease on October 26, 1954. The entire consideration for the conveyance was Dr. Mease's promise and obligation to construct a therapeutic clinic within the specified time, the inducement to the corporation being the enhancement of the property for promotional purposes. In the event Mease did not fulfill his promise as to construction of the clinic, which was the only consideration required of him for the conveyance, then by specific condition of the contract and of the corporate resolution, he was to surrender his exclusive privileges for therapeutic clinic purposes and any claim to the conveyance of land.
Clearly, the obligation of Mease to construct the clinic as specified constituted a dependent covenant going to the entire consideration of the contract for the conveyance, and failure to fulfill that obligation warranted the suit by the corporation. It must be borne in mind that at the pertinent times, Mease was an officer and director of the corporation and occupied a fiduciary relationship to it and its stockholders. In view of the situation here, the fact that Daley had acquired all of the stock does not compel the setting aside of the condition contained in the written agreement and the resolution through which the property was conveyed. At no time has Mease done anything whatever toward the fulfillment of his promise to build the clinic, nor has he given any new consideration for the alleged modification. His is the burden *181 of proving the affirmative defense, and this he has not done.
We are satisfied that the chancellor has not committed reversible error, and his decree is hereby affirmed.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] "Therapeutic Clinic. It is mutually agreed that it is of primary importance of the corporation that a Therapeutic Clinic for massage and the treatment of arthritis and related or other ailments be established adjacent to and in connection with the Warm Salt Springs. In consideration of the building and establishment of such a Clinic by Mease, or other physicians under his direction, the corporation shall, as soon as possible, deed and convey to Mease, or his nominee, an area not to exceed five (5) acres, and not exceeding twenty-five (25%) per cent of the frontage of said lake and spring, and in accordance with the attached sketch, designated Exhibit `C', and by reference made a part hereof, and the right to use the mud bordering on the lake. Said Therapeutic Clinic to be established on an exclusive basis, and the corporation covenants that it will not allow the use of the waters from the spring or lake by any other therapeutic organization, as well as agreeing to do all things in its power to protect the exclusive right of said clinic contemplated herein. In return his nominee, shall build or substantially start a building for such clinic within twelve (12) calendar months from the date of deeding such property, free and clear of encumbrances. If said clinic shall not be built or substantially started within such twelve (12) month term, and the corporation shall be released from any and all obligation hereunder, and Mease shall surrender his exclusive privileges for therapeutic clinic purposes with regard to the waters of the lake or spring and any claim or demand for the conveyance of land."
[2] "Be It Resolved, that it is of primary importance to the corporation that a therapeutic clinic for massage and the treatment of arthitis and related or other ailments be established adjacent to and in connection with the Warm Salt Springs owned and controlled by subsidiaries of Sarasota Springs, Inc., that in consideration of the building and establishment of such a clinic by J.A. Mease, Jr. or other physicians under his direction, this corporation shall as soon as possible, deed and convey to Mease or his nominee, an area not to exceed five acres and not to exceed twenty-five per cent of the frontage of said lake or spring in accordance with a sketch prepared and submitted this date, and by reference made a part hereof, together with the right to use the mud bordering on such lake or spring. Said therapeutic clinic to be established on an exclusive basis and the corporation covenanting that it will not allow the use of the waters from the springs or lake by any other therapeutic organization as well as agreeing to do all things in its power to protect the exclusive right of said clinic contemplated herein.

"In return and consideration for such deed and conveyance, Mease or his nominee shall build or substantially start a building for such clinic within twelve (12) calendar months from the date of deeding such property free and clear of encumbrances. If said clinic shall not be built or substantially started within such twelve (12) month period the corporation shall be released from any and all obligation hereunder and Mease shall surrender his exclusive privileges for therapeutic clinic purposes with regard to the waters of the lake or spring and any claim or demand for the conveyance of land."
[3] "When will I start building the clinic?

"There are two factors vitally necessary for this operation. One it must have ingress and egress, and two, patients must have living facilities, such as motel, restaurant, etc. The second factor is not important at this time. I know it will come with the improved developments. However, the first factor is extremely important, not only from the standpoint of availability, but also for the purpose of building operations.
"It has been understood between us that such ingress and egress to the clinic grounds would be completed by the corporation by extending the pavement of Muscogee Road around the clinic grounds and returning to Ortiz Blvd. The roads must be properly paved to permit building material access to the property.
"Within 60 days after this road is completed, I shall start building the clinic. However, because of the delay on the part of the corporation in the completion of the roads, I question seriously whether the building can be completed by April 30th, 1956, which is one year from the date of the deed. However, the building will be started as mentioned before, as soon as the roads are completed and the building should be completed during 1956."