378 So.2d 34 (1979)
Richard S. BACH, D.D.S. and Carol Ann Bach, R.D.H., Appellants,
v.
FLORIDA STATE BOARD OF DENTISTRY, Appellee.
No. PP-199.
District Court of Appeal of Florida, First District.
November 30, 1979.
Rehearing Denied January 9, 1980.
*35 Baya Harrison, III, St. Petersburg, Fuller & Johnson, Tallahassee, for appellants.
L. Haldene Taylor, Jacksonville, Deborah J. Miller, Tallahassee, for appellee.
ERVIN, Judge.
Richard Bach appeals from an order of the Board of Dentistry suspending him from the practice of dentistry for a period of six months, and Carol Ann Bach appeals from the order suspending her from the practice of dental hygiene for a period of one year. Both attack the competency and substantiality of the evidence supporting the findings of fact and conclusions of law. As to Mrs. Bach, the wife of Dr. Bach and also his dental hygienist, the record clearly supports the findings entered. The evidence relating to Dr. Bach is circumstantial, and the resolution of the question whether the order of suspension can be sustained turns on whether one can logically infer from the evidence that Dr. Bach permitted his dental hygienist to administer an anesthetic, an operation which a hygienist is precluded from performing. See Section 466.38, Fla. Stat. (1977).
Dr. Bach argues the Board presented no evidence showing that his dental hygienist performed a prohibited operation under his supervision, as that term is defined by Section 466.09(8)[1] and (9)[2], so that it cannot be inferred he knew and therefore permitted his employee to so act. He points out that the evidence clearly shows he was not physically present during the two occasions Mrs. Bach administered the anesthesia to a patient; therefore the only way he can be held accountable for the acts of his employee is for the Board to present evidence  which it did not  disclosing that he ordered Mrs. Bach to perform a prohibited act.
The Board responds to Dr. Bach's arguments by relying upon certain cases construing the beverage licensing laws, e.g., G. & B. of Jacksonville, Inc. v. State, etc., 371 So.2d 137 (Fla. 1st DCA 1979) and Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962), which hold that the state beverage director correctly revoked certain beverage licenses because the licensees' employees had persistently and repeatedly violated the law, *36 thus leading to the conclusion that despite the licensees' absence from the premises, they either condoned or negligently overlooked the illegal activities. We are unpersuaded by the purported analogy of those cases to the circumstances here.
Section 561.29(1)(a) authorizes the Division of Alcoholic Beverages and Tobacco to revoke or suspend the license of any person when the Division finds that either the licensee or his agents have violated certain laws of the state on the licensed premises. A literal reading of the statute would indicate that a beverage license could be suspended or revoked for a violation of the law committed by the licensee's employees, irrespective of his own personal fault. See Pauline v. Lee, supra at 364. In an effort, no doubt, to construe the statute so as to sustain it against constitutional attack, the courts have refused to uphold revocations of beverage licenses when the evidence showed only that on one occasion the licensee's employees violated the laws, but also showed that the licensee otherwise took measures to comply with them. E.g., Cohen v. Schott, 48 So.2d 154 (Fla. 1950); Trader Jon, Inc. v. State Beverage Department, 119 So.2d 735 (Fla. 1st DCA 1960); Taylor v. State Beverage Department, 194 So.2d 321 (Fla. 2d DCA 1967). However, if the laws were repeatedly and flagrantly violated by the employees, an inference arose "leading to the conclusion that such violations ... were either fostered, condoned or negligently overlooked by the licensee, notwithstanding his absence from the premises on the dates in question." Pauline v. Lee, supra at 364. The above cases apply a standard of simple negligence to the revocation of a beverage license. As a result, if the evidence supported the conclusion that the licensee failed to exercise ordinary care in the maintenance of the licensed premises or the supervision of his employees, he could be found guilty of negligence and his license revoked.
The standard of simple negligence does not apply to the revocation or suspension of a dentist's license. The provisions of Section 466.38 and 561.29 are markedly different and must be construed differently. Section 466.38 provides that "[t]he board shall suspend or revoke the license of any dentist who shall permit any dental hygienist operating under his supervision to perform any operation other than that permitted under the provision of this chapter... ." (e.s.) Where statutes provide grounds for revocations of licenses, those provisions must be strictly construed and strictly followed because the statute is penal in nature. State v. Pattishall, 99 Fla. 296, 126 So. 147, 148 (1930). Additionally, when a statute authorizes revocation of a license for certain enumerated causes, the license cannot be revoked for any ground other than those causes specified. State ex rel. Williams v. Whitman, 116 Fla. 196, 156 So. 705 (1934); In re Weathers, 159 Fla. 390, 31 So.2d 543 (1947).
Section 466.38  unlike 561.29  requires as a precondition to the suspension of a dentist's license that the dentist permit his employee to perform an unauthorized operation. Does the statute require also, as contended by Dr. Bach, that such permission may only be given by express order when the dentist is not present at the time the employee carries out an illegal activity? We think not. The word "permit" includes, within its definition, consent, authorization, toleration and the granting or giving leave to do something. Webster's Third New International Dictionary (1967). The definition appears to recognize implied or tacit permission. Does, however, the evidence reveal Dr. Bach's implied approval of Mrs. Bach's illegal acts? The answer is resolved by consulting the law of agency.
Before one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed and that he approved of the act. Ball v. Yates, 158 Fla. 521, 29 So.2d 729, 732 (1946). It is generally the rule that the doctrine of constructive knowledge does not apply to bring about ratification. The principal is charged only upon a showing of full knowledge, and not because he had notice which should have caused him to make inquiry, which in *37 turn would have brought to his attention the knowledge of the unauthorized act of the employee. 2 Fla.Jur.2d, Agency and Employment, § 52 at page 204 (1977). The finding by the hearing officer that Dr. Bach knew or should have known of his employee's acts because they were performed openly and without any attempt to conceal them on two separate occasions is simply not consistent with the law of agency. There is no duty imposed upon the principal to make inquiries as to whether his agent has carried out his responsibilities. The principal "has a right to presume that his agent has followed instructions, and has not exceeded his authority." Oxford Lakeline v. First Nat. Bank, 40 Fla. 349, 24 So. 480, 483 (1898). And,
[w]henever he is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts, or that he was willfully ignorant, or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances. Id.
The evidence does not show that Dr. Bach had full knowledge of his agent's unauthorized activities. Nor may such knowledge be imputed to him. Finally, the fact that his agent, on two separate occasions when Dr. Bach was not present, routinely injected an anesthetic into the gums of a patient is hardly consistent with any conclusion that Dr. Bach was willfully ignorant or purposely refrained from seeking information which would have disclosed the illegal activity.
Our construction of Section 466.38 is consistent with the interpretation given the dental licensing laws by the Washington Supreme Court prohibiting the hiring of a non-licensed dentist. The court stated that if a licensed dentist willfully and intentionally flaunted the law by hiring an unlicensed dentist, he demonstrates his lack of trustworthiness to continue the practice of dentistry, but if he inadvertently or negligently employs a non-licensed dentist, such conduct does not indicate a state of mind which would be characterized as that untrustworthiness which would constitute a ground for revocation. In re Flynn, 52 Wash.2d 589, 328 P.2d 150, 154 (1958). In the absence of Dr. Bach's knowledge of his employee's unauthorized acts, it cannot be concluded that he impliedly permitted or ratified them.
The order suspending Mrs. Bach's license is affirmed and that suspending Dr. Bach's license is reversed.
SHIVERS, J., concurs.
ROBERT P. SMITH, Jr., Acting C.J., dissents in part.
ROBERT P. SMITH, Jr., Acting Chief Judge, dissenting in part:
I dissent from the decision to set aside the Board's order concerning Dr. Bach. In my opinion the Board was entitled to infer from the evidence submitted  Dr. and Mrs. Bach chose to submit none  that Dr. Bach actually knew his wife, the hygienist, routinely gave novocain shots to patients she thought needed them, or that his supervision of her work, required by Chapter 466, was so entirely inadequate as to permit whatever treatment she took mind to give, including the prohibited injections. I would affirm the Board's order.
NOTES
[1] "(8) `Supervision'  Acts performed in the office of a licensed and registered Florida dentist, under his order, control, and responsibility."
[2] "(9) `Direct Supervision'  Acts performed in the office of a licensed and registered Florida dentist when he is physically present, under his order, control, and responsibility."