SMITH, Judge.
Appellant Charlotte County Lodge No. 2153 (hereinafter “appellant” or the “club”) timely appeals a final order of the appellee Department of Business Regulation (hereinafter “DBR”) imposing a $500.00 fine or, upon failure to pay this fine within fifteen (15) days of rendition, a thirty (30) day suspension of the appellant’s liquor license. We reverse.
The DBR served upon appellant a show cause order on March 18, 1983, alleging appellant’s violation of Section 561.29(l)(a) and Chapter 849, Florida Statutes (1981). Specifically, the DBR alleged that appellant’s employees were maintaining a “gaming house,” engaging in bookmaking and other gambling activities, and possessing and/or utilizing various objects the DBR characterized as “prima facie evidence” of gambling. After a formal administrative hearing conducted pursuant to Section 120.-57, Florida Statutes (1981), the hearing officer recommended that appellant be found not guilty of the charges alleged in the notice to show cause since, the hearing officer concluded, the evidence presented failed to establish that a violation of Chapter 849, and hence Section 561.29(l)(a), Florida Statutes, had occurred. Although the DBR accepted the hearing officer’s findings of fact, it rejected his conclusion of law that no violation of the cited statutes had been shown. Instead, the DBR concluded that the evidence established simple negligence on appellant’s part by failing to supervise appellant’s employees so as to prevent gambling on the premises. Consequently, the DBR ordered the penalties imposed upon appellant.
The hearing officer’s findings of fact are as follows: Appellant is the local chapter of the national Elks Lodge. The lodge premises consists of a number of rooms, including a lobby, lounge area with bar, kitchen, and large dining and meeting room. Located behind the lounge area is a small room called the “stag room,” which, according to the rules of the club, is open for and used only by club members. Located inside the stag room is a pool table, a number of card tables, a shuffle board court, and a bar.
On January 27, 1983, Beverage Officer Stephen Tompkins visited the club to investigate a complaint from an unidentified complainant that the club had sold kegs of beer to another fraternal organization. After a short discussion on this subject with the club’s manager, Officer Tompkins made what he characterized as a routine inspection of the club’s premises. During this inspection, he observed a number of documents and other items which he seized as evidence of violations of Section 849, Florida Statutes (1981), relating to prohibit *1211 ed gambling activities. Included in the seizure were a white piece of paper with notations of figures, names, dollar signs, and references to professional football teams scheduled to play in the near future, three pieces of white paper which Officer Tompkins interpreted to be score sheets for a card game of some sort, and three yellow envelopes marked on the front of each with the notation “three players” or “four players.” The yellow envelopes were empty. Officer Tompkins also found two paper bags bearing the business name of “Quick Print” on the outside of each, and containing several hundred pages of “tally sheets” all of which Officer Tompkins interpreted as suitable for calculation of points accumulated during games of chance, such as cards or pool. Officer Tompkins also found a yellow folder containing a typewritten rule book called “Eight Ball Tournament House Rules,” dated August 23, 1982. This rule book was apparently in reference to an upcoming pool tournament to be played on the club premises, although the hearing officer found no evidence in the record establishing the identity of the planners of this tournament. One of the club’s officers testified without contradiction that upon being informed of the existence of the proposed pool tournament, he took steps to insure that no such tournament took place. The record does not establish that the planned tournament actually occurred.
As previously noted, appellant was charged with violating Section 561.29(l)(a), Florida Statutes (1981), which grants the DBR authority to revoke or suspend a beverage license when it finds that either the licensee or its agents have violated the laws of this state on the licensed premises. Lash, Inc. v. State, Dept. of Business Regulation, 411 So.2d 276, 278 (Fla. 3d DCA 1982). The DBR here based its conclusion of law that appellant had violated certain sections of Chapter 849 primarily on two grounds: First, it concluded that the three yellow envelopes, as well as the tally sheets found in the Quick Print bags, confiscated by Officer Tompkins, constituted “prima facie” evidence of gambling under Section 849.05, Florida Statutes; and second, the fact that some of the evidence found by Officer Tompkins was located either in plain view or in areas on the premises under the exclusive control of the appellant’s officers and employees was evidence of simple negligence on the part of appellant’s officers in the supervision of its premises. The DBR cites Lash, supra, for the proposition that a finding of simple negligence will suffice in support of the imposition of an administrative penalty, including license revocation. However, the findings of fact made by the hearing officer and accepted by the DBR do not support the DBR’s conclusion of law, and render Lash inapposite.
For example, the evidence upon which the DBR based count 1 of the show cause order, the “bookmaking” charge, a single piece of paper apparently recording betting information found lying in the open behind the bar in the “stag room,” was undated and unsigned. In addition, the origin of the paper was unknown, and the persons whose names appeared on it were not identified. Accordingly, that evidence does not establish that any bets regarding the football game were taken or received within the lodge so as to make out a violation of Section 849.25(1), Florida Statutes (1981). For similar reasons, the evidence the DBR suggests supports a violation of Section 849.08 is insufficient to support such a charge. Here, Officer Tompkins, upon examining the contents of a cabinet located in the “stag room,” found three white sheets of paper containing first names or the designations “we” or “they” as well as columns with running totals seemingly indicative of the scoring of some sort of card game. The hearing officer found without contradiction that no proof was adduced below that any of the white sheets of paper were actually used for gambling or were implements of gamblers. Likewise, the evidence supportive of counts 3 and 4 of the show cause order, relating to Section 849.05 prima facie evidence, is in *1212 nocuous,[1] and in any event, again no evidence was offered below showing that these items were actually used for gambling on the lodge premises.
Moreover, the evidence adduced below urged by the DBR in support of counts 5, 6, and 7 of its show cause order, relating to the “Elks Lodge 2153 pool tourney,” does not establish violations of Chapter 849 because no evidence was produced below indicating that the proposed pool tournament actually took place. On the contrary, appellant’s evidence is uncontra-dicted that one of its officers took positive action to insure that the tournament would not take place. Finally, under count 8 of the show cause order relating to Section 849.01’s prohibition against “keeping gambling houses,” this section requires a showing of the element of habitualness in connection with the use of the premises for gambling. Ferguson v. State, 377 So.2d 709 (Fla.1979). Here, none of the evidence introduced below establishes that any gambling activity ever took place on the premises. At best, the evidence indicates one instance of the presence of gambling implements or paraphernalia which arguably could be considered as prima facie evidence of the use of the premises for gambling purposes. However, one violation may not be equated with the statute’s habitualness requirement. Ferguson v. State, supra, at 711.
The evidence relied upon to support appellee's final order below suffers from one fatal flaw overall: It merely points towards one, apparently isolated, violation of Chapter 849, rather than a series of violations “committed in a persistent and recurring manner,” Lash, supra, at 278. Although it is generally true that a holder of a beverage license may suffer revocation by the DBR under Section 561.29(1) upon a showing of simple negligence, this standard is not met where the evidence established that the violation occurred on only one occasion and that the licensee otherwise took measures to comply with applicable law. Lash, Inc. v. State, Department of Business Regulation, 411 So.2d 276, 278 (Fla. 3d DCA 1982), Golden Dolphin No. 2, Inc. v. State, Division of Alcoholic Beverages & Tobacco, 403 So.2d 1372 (Fla. 5th DCA 1981), Bach v. Florida State Board of Dentistry, 378 So.2d 34, 36 (Fla. 1st DCA 1980), (dicta), Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962), cert. den., 156 So.2d 389 (Fla.1963). In those instances where courts have sanctioned revocation by the DBR because of simple negligence on a licensee’s part for failing to exercise due care in the supervision, of agents or employees who engage in unlawful activity on the licensee’s premises, the courts have found repeated and flagrant violations by the employees which allows an inference that said violations had been fostered, condoned, or negligently overlooked by the licensee. Pauline v. Lee, supra. It is this evidence of continued violations of statutory law by a licensee or the licensee’s employees that the courts characterize as simple negligence supportive of license revocation. Bach v. Florida State Board of Dentistry, 378 So.2d 34, 36 (Fla. 1st DCA 1980).
Here, there is no showing of evidence suggestive of illegal gambling activity at any time other than January 27,1983, when Officer Tompkins conducted his inspection of the appellant’s premises. All of the appellant’s officers or trustees who appeared at the hearing before the hearing officer below testified that they were unaware of any gambling activity having ever taken place on the lodge premises. Moreover, when informed by Officer Tompkins of the proposed upcoming pool tournament, which would have included cash prizes to the winner of the tournament, and was to *1213 be held in the “stag room,” the “Exalted Ruler” of the appellant testified without contradiction that he took steps to assure that the pool tournament never took place. On this record, we hold that the DBR is precluded from determining, contrary to the findings and conclusions of the hearing officer, that appellant was guilty of “simple negligence” which would constitute a violation of Section 561.29(l)(a), Florida Statutes (1981). See Jones v. State, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco, 448 So.2d 1109, 1111 (Fla. 1st DCA 1984).
Accordingly, the final order of appellee fining or suspending appellant’s license is reversed and the cause is remanded for entry of an order dismissing the administrative complaint filed against appellant.
REVERSED and REMANDED with directions.
WENTWORTH and WIGGINTON, JJ., concur.

. This evidence consisted of three yellow envelopes, two of which were empty but had the notations “three players" or "four players" written on the outside of the envelopes, and a third containing a notation "tally sheets” on the outside and two sheets of paper appearing to be tally sheets on the inside. Also offered in support of counts 3 and 4 of the show cause order were two paper bags bearing a business name "Quick Print.” The bags contained several hundred blank tally sheets. The hearing officer pointed out in his findings of fact that the tally sheets confiscated by Officer Tompkins were almost identical to those used to keep score in bridge and other similar innocent card games.