480 So.2d 1354 (1985)
SURF ATTRACTIONS, INC., d/b/a One Stop Food, Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, Appellee.
No. BF-197.
District Court of Appeal of Florida, First District.
December 16, 1985.
Rehearing Denied January 20, 1986.
*1355 Jeffrey C. Bassett of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellant.
Louisa E. Hargrett, Staff Atty., Tallahassee, for appellee.
BARFIELD, Judge.
Surf Attractions, Inc. (licensee) appeals from a final order of the Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (agency). We reverse.
The licensee operates a convenience store on Panama City Beach and holds a beverage license issued by the agency. On April 21, 1984, beverage agents observed two young men exiting the licensee's store, carrying a case of beer which they had purchased. The young men were unable to provide appropriate proof of age and were arrested. The agency issued a show cause order expressing its intention to impose sanctions against the licensee and the licensee requested a formal hearing pursuant to section 120.57(1), Florida Statutes (1983).
The evidence at hearing revealed that Lawrence Presley, the licensee's treasurer, approved the sale of beer based on the purchaser's use of a Missouri traffic ticket and a photo identification card from a community center. The hearing officer found that the sale violated section 562.11(1), Florida Statutes (1983) and that the licensee was therefore subject to sanctions under section 561.29(1) and (3). He concluded that since the violation was committed by a corporate officer, there was "no need to prove more than one violation or to prove the separate and independent culpable responsibility of the licensee corporation... ." The order recommended a $500 fine, with $400 of that to be suspended on conditions that there be no further violations and the licensee impose stricter controls on approval of identifications. The agency issued its final order which accepted the hearing officer's findings of fact and conclusions of law but which increased the penalty to a fine of $1,000.
Appellant argues on appeal that the agency erred in imposing a strict liability standard on the licensee in penalizing it pursuant to section 561.29(3).[1] The appellant points to a long and well-established line of Florida cases, beginning with Cohen v. Schott, 48 So.2d 154 (Fla. 1950), which holds that the agency must show a lack of due diligence on the part of a beverage licensee before sanctions may be imposed. See, e.g., Lash, Inc. v. State, Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982); Golden Dolphin No. 2, Inc. v. State, Division of Alcoholic Beverages & Tobacco, 403 So.2d 1372 (Fla. 5th DCA 1981); Woodbury v. State Beverage Department, 219 So.2d 47 (Fla. 1st DCA 1969); Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962), cert. denied, 156 So.2d 389 (Fla. 1963); Trader Jon, Inc. v. State Beverage Department, 119 So.2d 735 (Fla. 1st DCA 1960).
*1356 The agency's response is that where, as here, the violation is committed by a corporate officer, there is no need to show negligence or lack of due diligence in the commission of the violation. Since we find no support for this proposition in the law of agency or the case law concerning beverage license penalties, nor do we find any logical force behind it, we reject it. It is true that where the violation is committed by employees, it may be necessary for the agency to show a series of violations to impute lack of due diligence to the licensee. Golden Dolphin; Pauline. We find, however, that while sanctions may be imposed for a single violation by a corporate officer, the agency must still prove lack of due diligence by the officer. G & B, Inc. v. State, Department of Business Regulation, Division of Beverage, 362 So.2d 959 (Fla. 1st DCA 1978); R & R Lounge v. Wynne, 286 So.2d 13 (Fla. 1st DCA 1973).
A second issue which has concerned this court in reaching proper dispostion of this appeal is whether the "due diligence" standard of Cohen v. Schott and its progency is applicable to imposition of fines by the agency under section 561.29(3). The statutes here in issue, sections 561.29(3) and 562.11(1)(a) appear to impose strict liability standards. Yet the Florida Supreme Court and the district courts, in numerous opinions, have interpreted section 561.29(1)(a), which authorizes the agency to suspend and revoke licenses and which also contains no requirement of mens rea or fault, to require a showing of lack of due diligence by the licensee. Is that interpretation properly extended to imposition of fines pursuant to section 561.29(3)?[2] We believe that it is.
Foremost among our reasons for doing so is that the agency conceded the question at oral argument, seeking to rely on the argument regarding corporate officers which we have rejected above. Additionally, we find several other persuasive reasons for the interpretation we place on the statute.
First, such an interpretation is consistent with constitutional principles. In Bach v. Florida State Board of Dentistry, 378 So.2d 34, 36 (Fla. 1st DCA 1979), Judge Ervin suggested that the rationale of Cohen v. Schott was necessary to sustain section 561.29(1)(a) against constitutional attack. While the constitutionality of section 561.29(3) is not directly before us in this appeal, we find that due process considerations favor a requirement of "fault" by the violator.[3]
An additional reason for this interpretation, one advanced by the appellant, is that the term "violation" should be interpreted in a similar manner where it appears in both subsections (1)(a) and (3) of section 561.29. We agree. See 49 Fla.Jur.2d, Statutes § 133 (1984).
Another rationale for requiring a finding of lack of due diligence to support a fine is to provide some parameters for the exercise of the agency's prosecutorial discretion. The "track record" of the agency in this case and others brought to the attention of this court leaves much to be desired. Village Saloon, Inc. v. Division of Alcoholic Beverages and Tobacco, 463 So.2d 278, 283 (Fla. 1st DCA 1984). Our confidence in the agency's discretion was not bolstered by its counsel's admission at oral argument that it has a policy of not imposing sanctions against a licensee who sells to minors when the licensee checks one of the forms of identification enumerated in section 562.11(1)(b), Florida Statutes (1983), (providing a complete defense to civil actions but expressly not applicable to actions by the agency). The agency's adherence to such a policy without providing prior notice to licensees raises due process *1357 concerns and, of course, the likelihood that the agency stands in violation of Florida's Administrative Procedure Act. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Finally, we are persuaded of the correctness of our holding by opinions of this court which have applied, without discussion, the "lack of due diligence" standard to appeals from agency-imposed fines for violations of the beverage laws. Charlotte County Lodge v. State, Department of Business Regulations, Division of Alcoholic Beverages and Tobacco, 463 So.2d 1208 (Fla. 1st DCA 1985); G & B, Inc.; R & R Lounge.
In summary, we find that the agency erred in adopting the hearing officer's conclusion of law that the licensee could be held strictly liable for a violation of the beverage laws. Accordingly, we reverse the order appealed and remand to the agency for further action under a correct interpretation of the law. § 120.68(9)(b), Fla. Stat. (1983).
REVERSED.
JOANOS, J., concurs specially with an opinion.
ERVIN, J., dissents with written opinion.
JOANOS, Judge, concurring specially.
I concur in the result reached by Judge Barfield's opinion in reversing the order appealed and remanding to the agency for further action under a correct interpretation of the law. Further, I concur in the opinion except with the expressed reasoning that the result is based partly upon a need to "... provide some parameters for the exercise of the agency's prosecutorial discretion" and the remarks concerning the "track record" of the agency in this case. I do not believe that it is necessary in the opinion to pass judgment on matters not before the court in the instant proceeding. I would, therefore, refrain from joinder in that portion of Judge Barfield's opinion.
ERVIN, Judge, dissenting.
I respectfully dissent. Those cases imposing a requirement of a lack of due diligence on the Division of Alcoholic Beverages and Tobacco, as a condition to the imposition of disciplinary sanctions, e.g., Lash, Inc. v. State, Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982); Cohen v. Schott, 48 So.2d 154 (Fla. 1950); Trader Jon, Inc. v. State Beverage Department, 119 So.2d 735 (Fla. 1st DCA 1960), involved only a construction of Section 561.29(1), Florida Statutes, giving the Division the general power to revoke or suspend a beverage license, due to violation of the laws of the state, the United States, or any municipal regulation by the licensee or his agents, officers, servants or employees, on the premises. The facts recited in those cases revealed no direct, personal involvement by the licensee in the particular violation, but rather related to the Division's attempt to impute negligence upon the licensee because of the active negligence of his employees.[1] Significantly, none of the cases cited by the majority dealt with the effect of Section 562.11(1)(b), Florida Statutes (1983). Section 562.11(1) states:
(1)(a) It is unlawful for any person to sell, give, serve, or permit to be served alcoholic beverages to a person under 19 years of age or to permit a person under 19 years of age to consume said beverages on the licensed premises. Anyone convicted of violation of the provisions hereof shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
(b) A licensee who sells, gives, serves, or permits to be served any alcoholic beverage to a person under 19 years of age or permits a person under 19 years of age to consume any alcoholic beverage on the licensed premises shall have a complete defense to any civil action therefor, except for any administrative action by the division under the *1358 Beverage Law, if, at the time the alcoholic beverage was sold, given, served, or permitted to be served, the person falsely evidenced that he was of legal age to purchase or consume the alcoholic beverage and the appearance of the person was such that an ordinarily prudent person would believe him to be of legal age to purchase or consume the alcoholic beverage and if the licensee carefully checked one of the following forms of identification: the person's driver's license, an identification card issued under the provisions of s. 322.051, or the person's passport, and acted in good faith and in reliance upon the representation and appearance of the person in the belief that he was of legal age to purchase or consume the alcoholic beverage. Nothing herein shall negate any cause of action which arose prior to June 2, 1978.
(emphasis supplied)
Subparagraph (b) of section 562.11(1) was enacted by Chapter 78-134, Laws of Florida (1978). It clearly expresses the legislative intent to subject a licensee to administrative disciplinary sanctions, regardless of fault, upon his violation of the provisions of section 562.11(1). The evidence, as recited in the majority's opinion, establishes that Presley, the treasurer and chief corporate officer of the licensee, sold alcoholic beverages to a minor.
I fully agree with the conclusion of the hearing officer, accepted by the Division, that "there is no need to prove more than one violation or to prove the separate and independent culpable responsibility of the licensee corporation for Presley's violation." (e.s.) This conclusion, which places an elevated standard of care on the personal acts of corporate officers, is manifestly consistent with the law of corporations, which historically has recognized distinctions between those individuals who exercise management decisions on behalf of the corporation and those who do not. For example, all corporations act and contract through individuals, such as those holding corporate officers or agents appointed by such officers. Mease v. Warm Mineral Springs, Inc., 128 So.2d 174 (Fla. 2d DCA 1961). A corporation's employee does not occupy a position of trust as does an officer, unless the employee also serves as his agent. Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2d DCA 1958). The officers and directors of a corporation are ordinarily regarded as acting in a quasi-fiduciary relationship to the corporation and are expected to exercise good faith in carrying out their corporate powers. Tampa Waterworks Co. v. Wood, 97 Fla. 493, 121 So. 789 (1929). Indeed, if they violate this trust, they may be held personally liable for so doing. Flight Equipment & Engineering Corp. v. Shelton, 103 So.2d 615 (Fla. 1958).
The legislative imposition of a strict liability standard in an administrative setting is analogous to the legislature's power to inflict criminal punishment upon a wrongdoer for certain types of offenses, regardless of the presence of mens rea, on the theory that the commission of the act prohibited by the statute constitutes the crime, and motive and knowledge or ignorance of its criminal character are immaterial circumstances on the question of the defendant's guilt. Coleman v. State ex rel. Jackson, 140 Fla. 772, 193 So. 84 (1939). See also 14 Fla.Jur.2d, Criminal Law § 41 (1979). In my judgment, the legislature has clearly made a policy decision that a licensee may be subjected to administrative disciplinary sanctions, regardless of fault. I would therefore uphold the Division's interpretation that the statute's proscription against the licensee may be applied when the corporate officer commits the violation, even though he may exercise a good faith belief that the person to whom he sells alcohol is of legal drinking age.
I consider cases relating to disciplinary proceedings brought against licenses of thoroughbred horse trainers persuasive as to the result that should be reached here. In Division of Pari-Mutuel Wagering, Department of Business Regulation v. Caple, 362 So.2d 1350 (Fla. 1978), the Florida Supreme Court had before it a question as to whether a thoroughbred horse trainer should be an absolute insurer of the condition of the horses placed in his charge regardless of the acts of third parties. The *1359 court, in upholding the Division's rule imposing strict liability on horse trainers, in the absence of the trainer's knowledge that any prohibited drugs had been used, observed:
As regards the proposition that due process invariably requires proof of guilty knowledge before punishment can be inflicted, that notion was long ago put to rest by the United States Supreme Court. See, e.g., United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910). It is now well established that in areas of activity requiring strong police regulation to protect public interests, strict liability may be imposed upon persons "otherwise innocent but standing in responsible relation to a public danger." United States v. Dotterweich, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943). Horse racing is such an area of activity. Western Turf Association v. Greenberg, 204 U.S. 359, 27 S.Ct. 384, 51 L.Ed. 520 (1907).
362 So.2d at 1355 (emphasis supplied). In upholding the Division's rules, the court overruled its prior opinion in State ex rel. Paoli v. Baldwin, 159 Fla. 165, 31 So.2d 627 (1947), and approved the following language stated in Fogt v. Ohio State Racing Commission, 3 Ohio App.2d 423, 426, 210 N.E.2d 730, 733 (1965):
Horse racing, at its best, is difficult to control, and would be practically impossible to regulate if every governing rule and regulation was made dependent for validity upon the knowledge or motives of the person charged with a violation.
* * * * * *
[W]hen viewed in the light of its overall purpose, the business to which it relates; and the potential evil which it is designed to prevent, we cannot say that the rule is unreasonable. Manifestly, it would be almost impossible to prove guilty knowledge or intent in cases of this kind, and the futility of prosecutions under a rule requiring probative evidence of guilty knowledge and intent would eventually leave the public interest and welfare to the mercy of the unscrupulous.
Id. at 1354. The Third District Court of Appeal in Solimena v. State, Department of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d 1240 (Fla. 3d DCA 1981), pet. rev. den., 412 So.2d 470 (Fla. 1982), was confronted with an issue similar to that before the Florida Supreme Court in Caple, and reached an identical result, recognizing that the "absolute insurer rule reflects an appropriate legislative purpose: prevention of the influencing of race results by the use of drugs." 402 So.2d at 1247.
A licensee's operation of a business involving the sale of intoxicating beverages is one which clearly affects the public health, morals, safety and welfare, and as such is subject to the police power of the state. The legislature has made a policy decision that if a licensee sells alcoholic beverages to a minor, such act may be a ground for disciplinary sanctions, notwithstanding the licensee's lack of knowledge or personal motives. The statute as such causes the licensee to become a virtual insurer against the proscribed conduct or condition stated in the statute. The Division, in a manner consistent with its regulatory duties, has interpreted the statute to apply to a licensee, acting in his individual capacity, or, if the licensee is a corporation, to the officers of the corporation who manage it.[2] This interpretation in my judgment cannot be deemed to constitute an erroneous interpretation of the law, and a strict liability standard, as applied to such persons, is an appropriate exercise of the Division's delegated, disciplinary power. Because the disciplinary sanction imposed by the Division *1360 is entirely consistent with the statutory purpose, I would affirm.
NOTES
[1] The hearing officer's order is not a model of clarity on this issue but it appears to impose strict liability on the licensee. The parties have so interpreted the order and we find no reason to do otherwise.
[2] As originally enacted, section 561.29 authorized the agency to suspend or revoke licenses for maintenance of a nuisance, etc. Section 561.53(1959) allowed the agency to compromise small claims for up to five dollars per violation. This provision was repealed by the 1961 legislature in Florida Laws 61-397, which also added an earlier version of the provision now codified at section 561.29(3).
[3] But see Chicago, Burlington & Quincy R.R. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582 (1911), upholding the validity of fines imposed under a strict liability standard pursuant to the federal Safety Appliance Act.
[1] It should be observed that Florida's due diligence standard is apparently at variance with the rule recognized in the majority of jurisdictions, holding a licensee strictly liable for violations of the law resulting from his acts or those of his employees. See Annot., 3 A.L.R.2d 107, 108 (1949).
[2] I place little importance on the statement made by the Division's lawyer during oral argument that the Division also interprets section 562.11(1) as permitting a licensee to establish a good faith defense in an administrative proceeding if he complies with the forms of identification specified in the statute. No showing was made in the instant case that the licensee did so, moreover, a licensee is hardly in a position to complain if the agency places a construction on the statute which is to his benefit.