Suit by the Gulfstream Park Racing Association against Hialeah Race Course, Inc., a corporation, the Gables Racing Association, Inc., and the Florida State Racing Commission to have statute providing that horse race track producing most tax revenue in preceding year shall have its choice of periods for operation of race track and that second in production shall have second choice, and to direct commission to allocate racing dates in a fair and impartial manner, or to have the court set up a fair plan of rotation. To review an order denying the motion of the Hialeah Race Course, Inc., a corporation, to dismiss the bill of complaint, Hialeah Race Course, Inc., a corporation brings certiorari.
Certiorari granted and order quashed.
The respondent, Gulfstream Park Racing Association, as plaintiff, by its bill alleges that it is the holder of a "permit" to conduct race meetings and the defendants, Hialeah Race Course, Inc., and the Gables Racing Association, Inc., also hold permits for such purposes, and they will hereinafter be referred to as "Hialeah" and "Tropical Park," respectively; *Page 693 
That the defendant, Florida State Racing Commission, hereinafter referred to as the "Commission," was created by the Legislature in 1935, and its duties and powers are covered by Section 550.02, F.S. 1941, F.S.A. This statute provides for a 120-day racing season, beginning December 1 each year, which the Commission shall apportion to the various tracks in a fair and impartial manner. This statute also provides that no horse race tracks located within one hundred air miles of each other shall operate on the same date. The three tracks which are parties in this action fall within this restrictive provision.
Plaintiff further alleges that the peak of the tourist season in southeast Florida now and for many years has been from about January 20 to March 15; that consequently this period is the most profitable for operating horse races and pari-mutuel betting; that, since plaintiff's creation, Hialeah has been allotted a forty-day period running approximately from January 20 to March 3, the choice dates for a profitable operation; that, although plaintiff has asked for these dates each year, the Commission arbitrarily and contrary to the mandatory provisions of the statute requiring a fair and impartial allocation, assigned these dates to Hialeah; and
That the 1947 Legislature of Florida adopted Chapter 23728 of the Acts of 1947, F.S.A. § 550.08-1, the title to said act being as follows:
"An Act to Allocate and Provide the Period of Operation of Horse Race Tracks and to Prohibit Future Permits in This State Where Three Horse Race Tracks Are Located, Within a Radius of One Hundred Air Miles of Each Other and Making Findings and Declaration of Policy Relative Thereto."
Section 1 of this act takes from the Commission the power to allocate dates; Section 2 establishes a 120-day racing season, to be divided into consecutive 40-day periods beginning December 1 each year; Section 3 provides that the track producing the most tax revenue in the preceding year shall have its choice of periods, and the second in production shall have second choice.
Plaintiff by its bill further charges that Section 3 of this act is unconstitutional, alleging numerous grounds, viz: misleading title, denial of due process and equal protection, and deprivation of a property right, and prays that the Court will hold Section 3 of said Chapter 23728 unconstitutional and will direct the Commission to allocate the racing dates in a fair and impartial manner, or that the Court set up a fair plan of rotation.
To the foregoing bill of complaint the petitioner filed a motion to dismiss which the chancellor denied, of which order petioner now seeks a review by certiorari.
The Legislature, by Section 1 of Chapter 23728 made certain findings, to the effect that the allocation of the time of operation was affected with a public interest, as follows:
"Section 1. It is the finding of the Legislature of the State of Florida that the operation of horse racing and legalized pari-mutuel and mutuel betting at horse race tracks in this State is a substantial business compatible to the best interests of the State and the taxes derived therefrom constitute an integral part of the tax structures of the State and counties. It is the further finding of the Legislature that two or more horse race tracks located within a radius of one hundred air miles of each other cannot operate on the same racing days without endangering the tax revenue derived therefrom and the general welfare of the public. It is the further finding of the Legislature that where more than one horse race track is located in a radius of one hundred air miles of one or more horse race tracks and the allocation and distribution of periods of operation to and between said horse race tracks is vested solely in the discretion of the State Racing Commission, that the power to change, alter and vary such racing periods from years to year, as it may see fit, is unsound and unwise, and creates a condition of uncertainty which retards the natural expansion and development of this business and influences and affects the financial stablity of the State and Counties. It is therefore declared to be the policy of the State of Florida that the present danger *Page 694 
to the growth and welfare of horse racing and to the tax structure of the State and Counties be eliminated insofar as the discretionary powers of the State Racing Commission in allocating dates to the horse tracks is concerned and this enactment is made pursuant to and for the purpose of carrying out such policy."
The law generally stated relative to monopolies is as follows:
"Sec. 41. Basis and Extent of Legislative Power; Public Interest as Justification. — As previously indicated, the police power is ordinarily the basis and criterion of the legislative right to create monopolies by the grant of special or exclusive privileges, although in the case of public utilities the right is sometimes predicated on the power of eminent domain. Hence, a state legislature cannot, under the guise of the police power, create a monopoly in any trade, occupation, or article innocuous in itself and the prosecution of or dealing in which is within the common right of all citizens upon equal terms. But unless the Constitution prohibits all monopolies by name, it seems established that even in states whose Constitutions contain general provisions, such as are above indicated, exclusive privileges and franchises may be granted in the public interest, or when necessary to the public safety or welfare. If a clear and manifest legislative right cannot be exercised without conferring privileges in the nature of a monopoly, then, as the authorities all agree, a monopoly may be created, for a denial of the right will not be suffered. However partial it may seem, the state can create a monopoly of any business that is inherently dangerous to society and for that reason may lawfully be prohibited by it on the grounds of public policy without violating any constitutional inhibition, because no person possesses an inherent right to engage in any employment the pursuit of which is necessarily detrimental to the public.
"In general, if the necessity and reasonable adaptation of the monopoly to the accomplishment of a legitimate purpose furnish the true criterion, it would seem that before applying these general constitutional provisions to a statute creating a monopoly, it is necessary to determine, independently of them, whether or not the monopoly is necessary and reasonably adapted to the accomplishment of a legitimate police or public purpose."
36 Am.Jur. p. 522 — Sec. 41 Monopolies, Combinations, etc.
The power of the legislature to limit racing to 120 days and to prescribe that no two tracks shall operate at the same time is not questioned. Since the limitation of time is imposed it then becomes a question of the validity of the act in respect to its provision for the allocation of time among the three tracks.
The state has become pecuniarily interested in racing because of the revenue from the pari-mutuel betting. Authorized gambling is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare.
We are of the conclusion that ch. 23728 (Acts 1947) is not unconstitutional per se, and that plaintiff's bill fails to present such facts as result in violation of its constitutional rights when the provisions of the act are complied with and abided by.
Certiorari is granted and the order is quashed.
BARNS, ADAMS, and HOBSON, JJ., concur.
THOMAS, C.J., and TERRELL and SEBRING, JJ., dissent. *Page 695