402 So.2d 1240 (1981)
Frank Rudolph SOLIMENA; Frank San Pedro; Francis Clifford Joyce, Appellants,
v.
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
Nos. 79-1897, 79-2030, 79-2047, 79-2247, 79-2290, 79-2291, 80-447 and 80-633.
District Court of Appeal of Florida, Third District.
August 4, 1981.
Rehearing Denied September 22, 1981.
*1242 Levine & Green and Bruce David Green, Fort Lauderdale, Greene & Cooper and Marc Cooper, Sams, Gerstein & Ward, Miami, for appellants.
David M. Maloney, Frates, Jacobs & Farrar, Tallahassee, for appellee.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
BASKIN, Judge.
Three race horse trainers seek to overturn orders of the Florida Division of Business Regulation, Division of Pari-Mutuel Wagering which revoked or suspended their licenses. In consolidated appeals, they challenge the absolute insurer rule under which they were held strictly liable for racing horses in which narcotics were found, without regard to whether they knew[1] that the horses had been given Sublimaze[2], a prohibited drug.
We affirm.

San Pedro
In the eighth race of Tropical Park Race Track held at Calder on November 20, 1978, Lexacon, a horse trained by appellant San Pedro, ran and won a race. After the race, the stimulant Sublimaze was found in the horse's system. The stewards referred the matter to the Division which issued a notice to show cause why San Pedro's license for 1978-1979 should not be suspended or subjected to other appropriate action. The Division referred the matter to the Division of Administrative Hearings (DOAH) for a hearing requested by San Pedro under section 120.57, Florida Statutes (1977). In the meantime, the Division disapproved renewal of his license for the 1979-1980 season; the 1978-1979 license was then due to expire. San Pedro obtained an injunction. The circuit court ordered the license renewed and enjoined suspension until San Pedro had been afforded a hearing and had exhausted his remedies. Over San Pedro's objection, the court ordered the hearing to be held before Division Director Rutledge instead of before DOAH. San Pedro attempted to disqualify Director Rutledge, arguing that Rutledge had prejudged the case, according to newspapers in which he had been quoted as stating that San Pedro's case lacked merit. San Pedro argued that the pending DOAH proceeding precluded the Division from conducting further proceedings. Because the stewards failed to make a finding that he or anyone else had knowingly drugged a horse, San Pedro sought, but failed, to have the matter remanded to the Board of Stewards. After a full hearing, the Director ruled that racing the horse under the influence of narcotics violated Florida Administrative Code Rules 7E-1.06(11)(a), the medication rule, and 7E-1.18(3), the absolute insurer rule. He disapproved the license application for the 1979-1980 season and revoked San Pedro's "current" license.

Solimena
Appellant Solimena hired Dr. Carl Meyer, a veterinarian, to treat horses he trained to race at Calder during the 1978 to 1979 season. The races were held at Calder for both Calder and Tropical Park Race Tracks. In October and November of 1978, Dr. Meyer administered Sublimaze to six horses and billed Solimena for myopathy treatments. When post-race tests disclosed the presence of the narcotic, the Division director notified the Tropical Park Board of Stewards. The stewards referred the matter to the Division. The Division issued administrative complaints, and in response to requests *1243 for hearings, referred the matter to the Division of Administrative Hearings, which conducted a hearing. The hearing officer found that on seven occasions horses trained by Solimena had raced with Sublimaze in their systems and that Solimena could be guilty of a violation of Rule 7E-1.06(11)(a), in view of the language of Rule 7E-1.18(3), but recommended charges be dismissed because Dr. Meyer had administered the drug without Solimena's knowledge. Dr. Meyer testified that he used Sublimaze as a pre-anesthetic agent to treat colic conditions. The Division issued three final orders adopting the hearing officer's finding that the medication rule had been violated on seven occasions, but rejected the hearing officer's findings that appellant did not know of the treatment.[3] The Division suspended Solimena's license for four years and fined him $5,000. An order was subsequently issued suspending Solimena for an additional six months.

Joyce
Appellant Joyce also hired Dr. Meyer to treat horses he trained. On several occasions, Dr. Meyer administered Sublimaze, which was discovered in the horses after the races. The Tropical Park Board of Stewards notified appellant of the positive test results and referred the matter to the Division of Pari-Mutuel Wagering. Hearings were held on each of two complaints before the DOAH. The DOAH hearing officer ruled appellant could be found guilty of violating the absolute insurer rule but recommended dismissal because Dr. Meyer had administered the drug without appellant's knowledge. The Division adopted the hearing officer's findings that the medication rule had been violated on two occasions but rejected the conclusion that appellant could not be held liable. It suspended his license for a total of 180 days and fined him $200.
The trainers advance a number of arguments in a multi-pronged attack upon the Division's orders.
The issues presented for our consideration emanate from a central concern: whether trainers may be held responsible for racing drugged horses regardless of whether they knew of or participated in administering the drugs. Appellants maintain the legislature did not empower the Division of Pari-Mutuel Wagering to hold them responsible as absolute insurers that the horses race without prohibited stimulants or depressants. They contend, however, that if we determine that the absolute insurer rule, Florida Administrative Code Rule 7E-1.18(3), may be read in conjunction with the medication rule, Florida Administrative Code Rule 7E-1.06(11)(a), to impose responsibility, then we must reject the insurer rule, either because its authorizing statute is vague or because the absolute insurer rule exceeds the Division's authority. In addition, appellants raise jurisdictional questions, and appellant San Pedro challenges the impartiality of the Division Director. We now address these arguments.

1. The absolute insurer rule.
Section 550.02, Florida Statutes (1977) and section 550.02(3), Florida Statutes (1977) provide legislative authorization for the enactment of rules by the Division of Pari-Mutuel Wagering:
550.02 The powers and duties of the Division of Pari-mutuel Wagering of the Department of Business Regulation.  The Division of Pari-mutuel Wagering of the Department of Business Regulation shall carry out the provisions of this chapter and supervise and check the making of pari-mutuel pools and the distribution therefrom, and:
.....
(3) Make rules and regulations for the control, supervision and direction of all applicants, permittees and licensees, and for the holding, conducting and operating of all racetracks, race meets, races held in this state; provided, such rules and regulations shall be uniform in their application and effect, and the duty of exercising this control and power is made mandatory upon the division. The division *1244 may take testimony concerning any matter within its jurisdiction and issue summons and subpoenas for any witness and subpoenas duces tecum in connection with any matter within the jurisdiction of the division under its seal and signed by the director.
The medication rule, 7E-1.06(11)(a), lists as its specific authority section 550.02(4), now renumbered 550.02(3)[4], and as the laws implemented, section 550.02 and section 550.24.
Section 550.24 states:
550.24 Conniving to prearrange result of race; stimulating or depressing horse or dog: penalty.  Any person who shall influence or have any understanding or connivance with any owner, jockey, groom or other person associated with or interested in any stable, kennel, horse or dog or race in which any horse or dog participates, to prearrange or predetermine the results of any such race or any person who shall stimulate or depress a dog or horse for the purpose of affecting the results of a race, shall be guilty of a felony of the third degree punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The absolute insurer rule, 7E-1.18(3) declares:
The trainer shall be responsible for, and be the insuror [sic] of the condition of the horses he enters. Trainers are presumed to know the rules of the Division.
The medication rule, 7E-1.06(11)(a) provides:
(a) The running of a horse in a race with any narcotic, stimulant, depressant or local anesthetic is prohibited. If the stewards shall find that any narcotic, stimulant, depressant or local anesthetic has been administered or attempted to be administered, internally or externally, to a horse before a race, such stewards shall impose such punishment and take such other action as they may deem proper under any of the rules, including reference to the Division, against every person found by them to have administered, or to have attempted to administer, or to have caused to be administered, or to have caused an attempt to administer, or to have conspired with another person to administer, such narcotic, stimulant, depressant or local anesthetic. If the Division laboratory shall find a positive identification of any such medication, such finding shall constitute prima facie evidence that such horse raced with the medication in its system.
If we read the medication rule in conjunction with the absolute insurer rule, one of the conditions a trainer insures is the absence of certain medication in horses he races. Appellants' claims for relief are predicated upon their lack of knowledge that the horses had been given prohibited drugs. They assert that under 550.24 the Division could act only against trainers who knew that prohibited drugs were administered. We disagree.
Whereas personal involvement and fault must support the commission of a felony under 550.24, they are not necessary components of a violation of Division rules. Section 550.02(3) compels the Division to regulate the conduct of races and imposes a "mandatory" duty on the Division to exercise control and power. Clear language in statutes is binding on courts. Phil's Yellow Taxi Co. v. Carter, 134 So.2d 230 (Fla. 1961). The clear language of sections 550.02(3) and 550.24 provides legislative authorization for combining the absolute insurer rule with the medication rule. See Florida Growers Coop Transport v. Department of Revenue, 273 So.2d 142 (Fla. 1st DCA), cert. denied, 279 So.2d 33 (Fla. 1973); Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla. 1st DCA 1962), cert. denied, 149 So.2d 41 (Fla. 1963).

2. The authorizing statute.
Next, appellants contend that section 550.02(3), the authorizing statute for the absolute insurer rule, invalidly delegates *1245 legislative authority[5] and is unconstitutionally vague[6] because it lacks guidelines.
"[T]he doctrine of nondelegation of legislative power ... is... firmly embedded in our law... .", Askew v. Cross Key Waterways, 372 So.2d 913, 924 (Fla. 1978); see D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1977); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968); State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969 (1908), but it does not eliminate all agency discretion.
We recognize that the legislature may not delegate to an administrative official the power to say what the law is. However, the legislature may enact a law complete in itself, which leaves some discretion in the operation and enforcement of the law with an administrative official. Department of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970). The distinction is said to be one between `delegation of the power to make the law, which necessarily involves a discretion as to what the law shall be, and the conferring of authority or discretion in executing the law pursuant to and within the confines of the law itself.' Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1966).
Brewer v. Insurance Commissioner & Treasurer, 392 So.2d 593, 595 (Fla. 1st DCA 1981).
In determining whether the legislature has improperly delegated discretion to the agency, we must consider whether the statute establishes standards and guidelines which direct the agency in implementing the law. Coca-Cola Company v. State Department of Citrus, 398 So.2d 427 (Fla. 1981). When the legislature confers authority on an agency charged with administering an aspect of police power, agency discretion must be governed by legislative standards and must be subject to judicial review. Reynolds v. State, 383 So.2d 228 (Fla. 1980); Florida State Board of Architecture v. Wasserman, 377 So.2d 653 (Fla. 1979). When "neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature", Askew v. Cross Key Waterways, supra at 919, unlawful delegation of legislative power may result.
The mere grant of authority to issue rules and regulations, however, does not constitute an unlawful delegation of legislative power. Florida State Board of Architecture v. Wasserman, supra; Florida Canners Association v. State Department of Citrus, 371 So.2d 503 (Fla.2d DCA 1979), affirmed, Coca-Cola Company v. State Department of Citrus, 398 So.2d 427 (Fla. 1981).
A recognized exception to the requirement that the legislature expressly enunciate guidelines and standards occurs in licensing and in the determination of the fitness of license applicants. Permenter v. Younan, 159 Fla. 226, 31 So.2d 387 (Fla. 1947); Brewer v. Insurance Commissioner & Treasurer, supra, but cf. State ex rel. Palm Beach Jockey Club, Inc. v. Florida State Racing Commission, 158 Fla. 335, 28 So.2d 330 *1246 (1946) (expressing doubts as to the extent to which rules going to the qualifications of licenses may be promulgated). When dealing with police power, the legislature may find it impractical to express a comprehensive standard. In that circumstance, a specific standard need not be expressed and the standard of reasonableness is applied. North Broward Hospital District v. Mizell, 148 So.2d 1 (Fla. 1962); Brewer v. Insurance Commissioner & Treasurer, supra. Also excepted from the guideline requirement are occupations which are practiced by privilege rather than by right and which are potentially injurious to the public welfare.
These statutes involve the field of licensing and the determination of personal fitness of applicants for or holders of a license. As such, the statutes fall within one of the long recognized exceptions to the strict requirement that express guidelines and standards be enunciated by the Legislature. Permenter v. Younan, 31 So.2d 387 (Fla. 1947). The Supreme Court set forth this exception in North Broward Hospital District v. Mizell, 148 So.2d 1 (Footnote 11) (Fla. 1962), as follows: `The general rule, which requires an express standard to guide the exercise of discretion is also subject to the exception that where it is impracticable to lay down a definite comprehensive rule, such as where regulation turns upon the question of personal fitness, or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressly stated in the legislation. In such situations the courts will infer that the standard of reasonableness is to be applied.
Brewer v. Insurance Commissioner & Treasurer, supra at 595-96.
We turn now to the specific legislation under review, chapter 550, and specifically section 550.02(3). Appellants argue that section 550.02(3) invalidly delegates authority to promulgate the absolute insurer rule. Although assertions of invalid delegation of legislative power have not previously been presented, due process attacks on this statute have failed. Division of Pari-Mutuel Wagering v. Caple, 362 So.2d 1350 (Fla. 1978).
Florida courts have consistently emphasized the special nature of legalized racing, describing it as a privilege rather than as a vested right. State ex rel. Mason v. Rose, 122 Fla. 413, 165 So. 347 (1936).
In 1936 we held that, because racing for money could be prohibited altogether in Florida, the legislature may condition a license to engage in legalized racing upon compliance with any rule that is `reasonably appropriate to the accomplishment of the purposes of the act.'
Division of Pari-Mutuel Wagering v. Caple, supra at 1355, quoting State ex rel. Mason v. Rose, supra at 349; see also Permenter v. Younan, supra. In Hialeah Racing Course, Inc. v. Gulfstream Park Racing Association, Inc., 37 So.2d 692 (Fla. 1948), appeal dismissed, 336 U.S. 948, 69 S.Ct. 885, 93 L.Ed. 1104 (1949), the court observed that in racing matters the state may exercise greater control and exercise its police power in an arbitrary manner because the public interest and the public welfare are affected by legalized gambling.
Section 550.02(3) invests the Division with the power to promulgate rules and regulations appropriate to the purpose of the act. State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21 (1936). The purpose of chapter 550 is to regulate and control racing in Florida in accordance with appropriate standards of conduct, a function of police power. Horsemen's Benevolent & Protective Association v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla. 1981). Courts evaluate administrative agency rules to determine whether they comport with legislative purpose. See Division of Pari-Mutuel Wagering v. Caple, supra (the antidrugging rule is valid because the state has an interest in protecting both the health of thoroughbred horses and the integrity of the sport); Department of Business Regulation v. Vandervoort, 273 So.2d 66 (Fla. 1972) (the setting of jockey fees is not authorized *1247 by the general statutes); State ex rel. Hollywood Jockey Club, Inc. v. Stein, 133 Fla. 530, 182 So. 863 (Fla. 1938) (limiting racing to daylight hours was authorized). When the courts observe that an agency is following legislative purpose, they find no invalid delegation. See Askew v. Cross Key Waterways, supra.
In Division of Pari-Mutuel Wagering v. Caple, supra, the court observed that the absolute insurer rule "achieves the prophylactic statutory goal." Overruling State ex rel. Paoli v. Baldwin, 159 Fla. 165, 31 So.2d 627 (1947),[7] the court stated:
In the interest of protecting both the health of thoroughbred horses and the integrity of the sport from which the state derives revenues, the state has a valid objective in seeking to prevent drugging of race horses. An absolute insurer rule for horse trainers represents a reasonable and valid exercise of the state's police power to achieve that objective.
Division of Pari-Mutuel Wagering v. Caple, supra at 1355.
In our view, the absolute insurer rule reflects an appropriate legislative purpose: prevention of the influencing of race results by the use of drugs. Legalized gambling operates only by permission of the state. An agency may therefore exercise police powers in furtherance of the statutory purpose despite the absence of specific guidelines. We hold that section 550.02(3) constitutes a valid delegation of authority to the agency.
Next, we address appellants' assertion that the stewards[8] were required to act before the Division could assert jurisdiction. See Swebilius v. Florida Construction Industry Licensing Board, 365 So.2d 1069 (Fla. 1st DCA 1979). Rule 7E-1.06(11)(a) contains no requirement that the stewards act first. We fail to find any statement in section 120.57, or elsewhere, which would require that action by the stewards precede Division action. Calfin v. Department of Business Regulation, Division of Pari-Mutuel Wagering, 391 So.2d 739 (Fla. 4th DCA 1980). This court has indicated in the past that the Division may conduct a de novo hearing following a steward's ruling. Vasquez v. Department of Business Regulations, 378 So.2d 1319 (Fla. 3d DCA 1980). We also find no merit in appellant San Pedro's argument that the Division divested him of his right to a hearing before DOAH pursuant to section 120.57. The Division acted pursuant to court order.
Because appellants failed to file prompt motions to dismiss, the Division's lack of compliance with section 120.60(5)[9] may not be the subject of a claim of prejudice. Sheppard v. Board of Dentistry, 385 So.2d 143 (Fla. 1st DCA), petition for review denied, 392 So.2d 1379 (Fla. 1980); see Florida Real Estate Commission v. Frost, 373 So.2d 939 (Fla. 4th DCA 1979).
Solimena moved to dismiss for noncompliance with section 120.60(5) during hearings which were held several months after the notices to show cause were issued. The notice requirement of section 120.60(5) serves to inform a licensee of pending charges and allows him to prepare a prompt repudiation. Sheppard v. Board of Dentistry, supra. If the licensee delays in filing a motion which raises agency noncompliance with the notice requirements, requests a *1248 hearing, and participates in discovery, he may not claim that he was uninformed. Appellant Solimena requested hearings and engaged in discovery. He therefore suffered no prejudice from lack of notice. Appellant Joyce failed to file a motion to dismiss. Appellant San Pedro moved for dismissal of the notice to show cause, demanded a formal hearing, and filed responses and defenses, but failed to assert lack of notice prior to the revocation proceedings.
San Pedro also contends that the Division failed to afford him the opportunity for a hearing prior to issuing its order denying his application for renewal of his license in violation of chapter 120. We note, however, that the Division's order informed the applicant of his right to a hearing under section 120.60(2). We find no violation of section 120.60(5).
Additionally, appellant San Pedro argues that Division Director Rutledge's refusal to disqualify himself deprived him of an impartial hearing.[10] In our opinion, Division Director Rutledge's refusal to disqualify himself is, at most, harmless error. Although the newspaper articles may have reported his views on the absolute insurer rule, they did not quote a belief that the trainers had violated any rule.
Appellants' remaining points lack merit.
The absolute insurer rule is a valid enactment by the Division in furtherance of an appropriate legislative purpose. We find no impropriety in the action taken by the agency, and we therefore affirm its decision.
NOTES
[1] The Division rejected a hearing officer's finding that appellant Solimena had no knowledge of the treatment administered to his horses. The basis for the rejection was the fact that Solimena did not testify; nevertheless, his license suspension was predicated on the absolute insurer rule rather than knowledge of the drugging. At issue in these consolidated appeals is the absolute insurer rule.
[2] Sublimaze is a brand name for the narcotic fetanyl, which metabolizes in the horse, becoming the stimulant dispropionyl dentanyl.
[3] See note 1 supra.
[4] Ch. 73-333, § 138 Laws of Fla.
[5] Article II, Section 3, Florida Constitution:

Branches of government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
[6] Appellee challenges our jurisdiction to consider the constitutional question in an appeal from final agency action against a licensee because the issue was not raised in the agency proceeding. We disagree.

An appellate court may decide the constitutionality of a statute despite the absence of an agency decision on the constitutional question. Rice v. Department of Health & Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). But see Dependable Air Conditioning & Appliance, Inc. v. Office of Treasurer & Insurance Commissioner, 400 So.2d 117 (Fla. 4th DCA 1981); Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979). An agency is powerless to decide the constitutionality of its rules or of Florida statutes. Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978); see 1 Fla.Jur. Administrative Law § 161 (1977). We do not here review the judgment of a court of law; we may consider any "freshly raised" questions of law, constitutional or otherwise. Rice v. Department of Health & Rehabilitative Services, supra at 849-50.
[7] Caple was decided on due process considerations rather than on the validity of legislative delegation of power. It serves, nevertheless, as authority that the absolute insurer rule is reasonable. Accord, Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).
[8] Because some violations were not discovered until after the close of the meet, they were brought to the attention of stewards other than those who presided at the time of the actual violations.
[9] § 120.60(5), Fla. Stat. (1977):

No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency has given reasonable notice by certified mail or actual service to the licensee of facts or conduct which warrant the intended action and the licensee has been given an opportunity to show that he has complied with all lawful requirements for the retention of the license.
[10] § 120.71, Fla. Stat. (1977):

(1) Any individual serving alone or with others as an agency head shall be disqualified from serving in an agency proceeding for bias, prejudice, interest, or other causes for which a judge may be recused.