402 So.2d 527 (1981)
Dr. Carl James MEYER, Appellant,
v.
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
No. 79-2402.
District Court of Appeal of Florida, Third District.
August 18, 1981.
*528 Houston, Faircloth, Cooper & Easthope and Earl Faircloth, Fort Lauderdale, for appellant.
David M. Maloney, Frates, Jacobs & Farrar, Tallahassee, for appellee.
Before HENDRY, SCHWARTZ and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
We affirm the order of the Department of Business Regulation, Division of Pari-Mutuel Wagering (Division), declaring Dr. Meyer, a veterinarian, permanently ineligible to have a pari-mutuel occupational license enabling him to serve as a veterinarian at racetracks in the State of Florida and imposing a $2,000 fine.[1]
In Solimena v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d 1240 (Fla. 3d DCA 1981), this court held, inter alia, that (1) action by the stewards is not a prerequisite to the jurisdiction of the Division, see Calfin v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, 391 So.2d 739 (Fla. 4th DCA 1980); (2) failure to challenge by appropriate motion the Division's alleged non-compliance with the notice provisions of Section 120.60(5), Florida Statutes (1977),[2] waives the right to complain of non-compliance, see Sheppard v. Board of Dentistry, 385 So.2d 143 (Fla. 1st DCA 1980), particularly where such non-compliance does not impair the fairness of the proceedings and result in prejudice to the applicant or licensee; and (3) although we have jurisdiction to entertain the claim not raised before the agency that Section 550.02(3), Florida Statutes (1977), is (a) unconstitutionally vague in its failure to provide guidelines and (b) unconstitutionally delegates legislative authority to the Division, these attacks upon the statute are unavailing. These holdings are dispositive on these identical points raised in Meyer's appeal.
Meyer's additional challenges are not foreclosed by Solimena. He contends, first, that the rules he was found to have violated[3] are not within the authority granted to the Division by Section 550.02(3), Florida Statutes (1977). Assuming, without deciding, that Meyer may "freshly raise" this question of law without having raised it before the Division,[4] we find that such *529 rules are reasonably related to the objectives of the statute, see Solimena v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, supra; compare Department of Business Regulation v. Vandervoort, 273 So.2d 66 (Fla. 1973); Horsemen's Benevolent and Protective Association v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla. 1981); and thus within the authority granted the Division.
Meyer's next contention is that the Director of the Division of Pari-Mutuel Wagering should have disqualified himself from presiding over Meyer's hearing because the Director was aware that another hearing officer, in a separate proceeding against two trainers, Solimena and Joyce,[5] had issued recommended orders which included findings that Meyer had injected the horses of these trainers with Sublimaze.[6] Meyer contended that he was "entitled to have a hearing officer who is not acquainted with any testimony, evidence or findings concerning [Meyer] that were received prior to the hearing." Because the Director admitted that he was "aware of the general nature of what was found" in the Solimena and Joyce hearings, although he had not seen the recommended orders, we address the merits of Meyer's contention.[7]
It is clear, and Meyer does not contend otherwise, that a combination of investigative, prosecutorial and adjudicative functions in a single body does not per se create an unconstitutional risk of bias. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Meyer's claim is that specific prejudice is demonstrated solely by the Director's awareness, through his role as Director, that in separate proceedings against two trainers Meyer was found to have injected horses with Sublimaze.[8] We reject this claim. See Wyatt v. *530 United States, 591 F.2d 260 (4th Cir.1979) (claim that judge who found Wyatt guilty in non-jury trial had previously sat as trier of fact in separate trial of co-defendant whose testimony on his own behalf implicated Wyatt would not be grounds for disqualification)[9]; see also Wilisch v. Wilisch, 335 So.2d 861 (Fla. 3d DCA 1976); United States v. Winston, 613 F.2d 221 (9th Cir.1980).
Therefore, since there is abundant evidence to support the Director's finding that on nine separate occasions Meyer injected horses with Sublimaze shortly before the scheduled race[10] in violation of the promulgated rules, there is absolutely no reason to disturb the decision of the Division.
Affirmed.
NOTES
[1] Meyer's license had actually expired before the Division's action, and his application for a new license had been denied.
[2] Renumbered as § 120.60(6), Fla. Stat. (1979), by Ch. 79-142, Laws of Fla.
[3] The primary concern of Solimena was the absolute insurer rule, Rule 7E-1.18(3), which is not involved here. Meyer was alleged to have violated Rules 7E-1.06(9)2, 7E-1.06(9)3, 7E-1.06(9)6, and 7E-1.06(11)(a), Florida Administrative Code. These rules, respectively, prohibit, with exceptions, the administration of medication within a certain time prior to the scheduled race; require reports of medications administered within 48 hours prior to the scheduled race; provide that a failure to report is deemed unauthorized medication; and prohibit racing a horse with any narcotic, stimulant, depressant, or local anesthetic and subject any person who breaks these rules to a fine or suspension or revocation of license.
[4] The Division, relying upon Section 120.56(1), Florida Statutes (1979), argues Meyer waived this issue by failing to raise it in the proceeding below. We view the language of Section 120.56(1),

"Any person substantially effected by a rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated authority."
as permissive authorization to challenge agency action in a non-adjudicatory proceeding, not as a requirement that such an issue be raised in license revocation proceedings. To the extent that the courts in Brevard Community College v. Florida Public Employees Relations Commission, 376 So.2d 16 (Fla. 5th DCA 1979), and Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1978), relied on Section 120.56(1) when they determined that a failure to attack the rule at the agency level constituted a failure to preserve that issue for appeal, we believe that reliance was misplaced. Compare McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (a pure question of law involving statutory interpretation need not be raised to the agency, because "judicial review would not be significantly aided by an additional administrative decision"), with McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971) (if the resolution of the question depends "on the application of expertise by [the] administrative [body] in resolving underlying issues of fact," then the issue must be raised before the agency).
[5] These trainers were co-appellants in the Solimena case.
[6] Meyer's motion to disqualify included another allegation that the Director had interviewed witnesses concerning Meyer's actions as a veterinarian at the track. Meyer's affidavit in support of his motion to disqualify made no further mention of this allegation, and when the motion was heard, Meyer's counsel specifically limited his motion to disqualify to "the fact that there have been two recommended orders issued in the case against Joyce and in the case against Solimena."
[7] Meyer's motion was untimely filed on the day of the scheduled hearing. Rule 28-5.09, Florida Administrative Code, applicable here through Section 120.54(10), Florida Statutes (1979), requires that motions to disqualify pursuant to Section 120.71, Florida Administrative Code, be made at least five days prior to the proceeding unless the party moving to disqualify was previously unaware of the ground. Moreover, Meyer's motion failed to comply with the procedures for disqualification set forth in Section 38.10, Florida Statutes (1979), which apply to agency hearings. State ex rel. Allen v. Board of Public Instruction, 214 So.2d 7 (Fla. 4th DCA 1968); Bieley v. Brown, 168 So.2d 552 (Fla. 3d DCA 1964).
[8] This finding was unnecessary to the decision to suspend or revoke the trainers' licenses. Under the absolute insurer rule, the trainers could be held responsible for racing drugged horses regardless of whether they knew of the administration of the drugs, Solimena v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, supra, and regardless of who administered the drugs.
[9] Federal cases rejecting efforts to disqualify judges from presiding at jury trials, as distinguished from judges who act as fact finders, are analogous, since the Federal disqualification statute, 28 U.S.C. § 455, draws no distinction between the two roles. Therefore, see Corbett v. Bordenkircher, 615 F.2d 722 (6th Cir.1980) (judge who, as county attorney, had prosecuted defendant on four occasions, including one case that formed partial basis for current habitual criminal charge, not disqualified); United States v. Partin, 552 F.2d 621 (5th Cir.1977) (judge who tried defendant whose conviction reversed not disqualified from presiding at new trial); United States v. Mathis, 550 F.2d 180 (4th Cir.1977); United States v. DiLorenzo, 429 F.2d 216 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971) (judge who heard trial of co-defendant not disqualified). Even as the judicial system "does not provide for no deposit/no return judges, disposable after one use," United States v. Partin, supra, at 637 n. 20, so too administrative hearing officers are not in such great supply that their familiarity with other matters concerning or even tending to inculpate the licensee requires, ipso facto, disqualification.
[10] Meyer's own bills to numerous trainers showed that he treated the horses shortly before the races under the guise of treatment for myopathy. Following the races, the treated horses were found to have Sublimaze in their systems. Meyer admitted to one trainer that he had administered Sublimaze to his horse before the race, but assured him it would not show up in a urine test; he admitted to others that he might have treated several horses with Sublimaze before races. At least four trainers saw Meyer inject their horses within two hours before the races. Finally, there were twelve instances (the subject of a separate finding by the Director) where Meyer's own bills reflected that he gave medication to horses which were never, as required by the rule, reported to the State Veterinarian.