818 So.2d 697 (2002)
Daniel G. HENNESSEY, Fred G. Warren and Celestina M. Gangemi, Appellants,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
Nos. 1D01-0434, 1D01-2230, 1D01-2234.
District Court of Appeal of Florida, First District.
June 17, 2002.
*698 David S. Romanik of David S. Romanik, P.A., Hallandale Beach, for Appellants.
Joseph M. Helton, Jr., Assistant General Counsel, Department of Business and Professional Regulation, Tallahassee, for Appellee.

ON MOTION FOR REHEARING
WOLF, J.
Appellants' motions for rehearing and rehearing en banc filed May 7, 2002, are denied. The court's opinion filed April 22, 2002, is withdrawn sua sponte, and the following opinion is substituted for clarification.
Appellants timely appeal from three orders: (1) Final order determining that rule 61D-6.002(1), Florida Administrative Code, is not an invalid exercise of delegated legislative authority; (2) final order imposing discipline on Daniel Hennessey; (3) final order imposing discipline on Fred Warren. We affirm in all respects and find that one issue merits discussion: Whether the administrative law judge erred in concluding that rule 61D-6.002(1), Florida Administrative Code is a valid exercise of delegated legislative authority.
The appellants, horse trainers, argue that rule 61D-6.002(1), Florida Administrative Code, the "absolute insurer rule," is an invalid exercise of delegated legislative authority. The challenged rule makes race-animal trainers the absolute insurers of the condition of the animals entered into any race held at a pari-mutuel wagering facility in Florida:
The trainer of record shall be responsible for and be the absolute insurer of the condition of horses or racing greyhounds, he/she enters to race. The trainers, kennel owners and operators are presumed to know the rules of the division.
Fla. Admin. Code R. 61D-6.002(1). Application of the rule in the instant case made the horse trainers/appellants strictly liable for three separate instances of impermissible drugs found in the post-race urine specimens of horses which appellants trained and entered in races at three separate Florida pari-mutuel wagering facilities.
The authorizing statutes identified in rule 61D-6.002 are section 550.0251(3), Florida Statutes, and sections 550.2415(2) and (13), Florida Statutes. Section 550.0251(3) mandates that the Division of Pari-Mutuel Wagering of the Department of Business and Professional Regulation "shall adopt reasonable rules for the control, supervision, and direction of all ... licensees, and for the holding, conducting, and operating of all ... races"; furthermore, this section specifically states that "the duty of exercising this control and power [over licensees and races] is made mandatory upon the division." Sections 550.2415(2) and (13) provide as follows:

*699 (2) Administrative action may be taken by the division against an occupational licensee responsible pursuant to rule of the division for the condition of an animal that has been impermissibly medicated or drugged in violation of this section.
. . . .
(13) The division shall adopt rules to implement this section. The rules may include a classification system for prohibited substances and a corresponding penalty schedule for violations.
(Emphasis added).
The statute provides that administrative action may be taken against the trainer who is "responsible pursuant to rule" for the condition of the horse he enters to race. As such, rule 61D-6.002(1), Florida Administrative Code, does not exceed the grant of rulemaking authority given to the department by the legislature through sections 550.0251(3) and sections 550.2415(2) and (13).
The final order upholding the validity of rule 61D-6.002(1) reflects the careful consideration of the facts presented to the administrative law judge and the department's actions in regard to its delegated authority:
24. Horse racing, at its best, is difficult to control, and would be practically impossible to regulate if every governing rule and regulation were made dependent for validity upon the knowledge or motives of the person charged with a violation. It would be almost impossible to prove guilty knowledge or intent in cases involving a reported positive test for an impermissible substance.
25. Every consideration surrounding the business of operating a race track, and the racing of horses thereon, seems to call for firm and rigid rules placing responsibility and imposing penalties for their violation.
26. The Department currently has six investigators assigned to cover 35 permitholders. The investigators are well known around the various race tracks they cover, which makes catching possible drug violations in the act almost impossible.
27. The Department's investigators are generally notified of a drug confirmation about ten days after a race has been run. Given that there are so few investigators covering 35 tracks and the reports are received ten days after a race, it would be very difficult to successfully determine who administered a prohibited substance to a horse.
28. The trainer is singularly the best individual to hold accountable for the condition of a horse. The trainer is either going to be with the horse at all time or one of his or her employees or contractors is going to be with the horse at all times, whether the horse is racing on an individual day or is merely stabled at the track. A trainer of racing horses is responsible for the animals' athletic conditioning. A trainer is also responsible for providing for the regular care of the horses he trains, including feeding and seeing to the medical needs of the horses. All persons who handle an animal prior to the running of a race are either employees of the track or Department or are employed by or in a professional relationship with the trainer. At no time prior to a race is a trainer or his employer prohibited from seeing to the security of the horse in the paddock. While there are other persons who come in contact with the horse prior to a race, the trainer due to his responsibility for the care and supervision of the animal stands in the best overall position to prevent improper medication of the horse.

*700 29. There is no practical alternative to holding the trainer of record responsible for the condition of the animals he enters to race. The Department's authority to require the return of a purse is insufficient to deter wrongdoers from attempting to affect the outcome of a race. The integrity of the pari-mutuel industry would suffer from the Department's inability to enforce statutes relating to the drugging of racing animals.
Although the absolute insurer rule has been upheld in prior challenges, see, e.g., Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation v. Caple, 362 So.2d 1350 (Fla.1978); Solimena v. State, Dep't of Bus. Regulation, Div. of Pari-Mutuel Wagering, 402 So.2d 1240 (Fla. 3d DCA 1981),[1] the "reasonably related" standard which was applied to uphold the absolute insurer rule in Caple and Solimena has been legislatively overruled, and a stricter standard now applies. Nevertheless, we believe that even under a stricter standard, the absolute insurer rule at issue in this case represents a valid exercise of delegated legislative authority.
The applicable standards for determining the validity of an administrative rule are set forth in section 120.52(8), Florida Statutes, which defines an invalid exercise of delegated legislative authority and identifies the circumstances which constitute an invalid exercise of delegated legislative authority. The standards set forth in the closing paragraph of section 120.52(8) require that an agency only has authority to adopt rules which are related to a specific grant of powers:
An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute.
(Emphasis added). In Southwest Florida Water Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000), this court examined the language in the 1999 amendment to section 120.52(8), quoted above. There we found that a significant feature of section 120.52(8), as amended, does not permit an agency to adopt a rule only because it is "reasonably related." Id. The amended section "now provides that an agency shall not have authority to adopt a rule merely because the rule `is within the agency's class of powers and duties.'" Id. at 598-599. Thus, subsequent to the amendment, an agency can only adopt rules which implement or interpret specific powers and duties granted by the enabling statute:
[I]t is clear that the authority to adopt an administrative rule must be based on an explicit power or duty identified in the enabling statute. Otherwise the rule is not a valid exercise of delegated legislative authority.
Id. at 599. In Save the Manatee, we expressly found that in reviewing for the *701 specific authority for a rule, the issue is not whether the grant of authority is "specific enough," but whether the enabling statute grants legislative authority for the rule at issue:
It follows that the authority for an administrative rule is not a matter of degree. The question is whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific enough. Either the enabling statute authorizes the rule at issue or it does not.
Id. See also Florida Bd. of Medicine, et al. v. Florida Academy of Cosmetic Surgery, Inc., et al., 808 So.2d 243 (Fla. 1st DCA 2002).
A plain reading of the authorizing statutes in this case demonstrates that the legislature granted the department the specific authority to hold a trainer responsible for the condition of the horses which he trains and races if these horses are raced with any drug in their system. Indeed, the administrative law judge found that the only practical way the department could carry out its statutory mandate was through the use of the absolute insurer rule. We, therefore, determine that the absolute insurer rule is still valid notwithstanding the amendments to Chapter 120, Florida Statutes.
The decision of the hearing officer upholding the validity of the rule is affirmed.
MINER and VAN NORTWICK, JJ., concur.
NOTES
[1] The predecessor rules, 7F-1.18(3) and 7E-1.06(11)(a), Florida Administrative Code, also imposed strict liability on trainers and were upheld in Caple and Solimena based upon a finding that the authorizing statute constituted a valid delegation of authority to the agency.