# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-2523
_____

JEFFERSON COUNTY KENNEL
CLUB, INC.,

Appellant,

v.

FLORIDA GAMING CONTROL
COMMISSION,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela Cote Dempsey, Judge.


June 3, 2026


OSTERHAUS, C.J.

In a 2021 special session, the Florida Legislature revised the Pari-mutuel Wagering Act, chapter 550, Florida Statutes, to implement a new gaming compact between the State and the Seminole Tribe of Florida. *See* Ch. 21-271, Laws of Fla. One part of the revised Act required pari-mutuel wagering permits to be revoked from permitholders that hadn't operated in the previous fiscal year. § 550.054(9)(c), Fla. Stat. Under this provision, the Jefferson County Kennel Club ("JCKC") stood to lose its pari-mutuel wagering permit because it didn't possess a license to operate in fiscal year 2020-2021. Hoping to retain its permit (and to sell it to someone else), JCKC sued the Florida Gaming Control

Commission. Its lawsuit claimed that the § 550.054(9)(c) permit-revocation provision was unconstitutional. But the trial court rejected JCKC's arguments. It granted summary judgment for the Commission, effectively clearing the way for the Commission to revoke JCKC's pari-mutuel wagering permit. JCKC now appeals the trial court's decision. We affirm.

## I.

Orders granting summary judgment and constitutional challenges to statutes are subject to de novo review as pure questions of law. *See, e.g.*, *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Jackson v. State*, 191 So. 3d 423, 426 (Fla. 2016). "[S]tatutes are presumed constitutional." *Jackson*, 191 So. 3d at 426. And courts must "construe challenged legislation to effect a constitutional outcome whenever possible." *Id.* (quoting *Fla. Dep't of Rev. v. Howard*, 916 So. 2d 640, 642 (Fla. 2005)). It is the challenging party's "burden to establish the statute's invalidity beyond a reasonable doubt." *Id.*

JCKC makes three constitutional arguments that the permit-revocation provision in § 550.054(9)(c) is unconstitutional. The statute reads as follows:

> The commission shall revoke the permit of any permitholder, other than a permitholder issued a permit pursuant to s. 550.3345, who did not hold an operating license for the conduct of pari-mutuel wagering for fiscal year 2020-2021. A permit revoked under this paragraph is void and may not be reissued.

§ 550.054(9)(c), Fla. Stat.

## A.

JCKC contends, first, that § 550.054(9)(c) amounts to an unconstitutional special law, in violation of article III, § 11(a)(12) of the Florida Constitution, because its permit-revocation regime applies only to a narrow, known class of nine permit holders statewide.

Article III, § 11(a)(12) of the Florida Constitution provides that "[t]here shall be no special law . . . pertaining to . . . [a] grant of privilege to a private corporation." The Florida Supreme Court has described a "special law" to be "one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal." *Fla. Dept. of Health v. Florigrown*, 317 So. 3d 1101, 1116 (Fla. 2021) (quoting *State ex rel. Landis v. Harris*, 163 So. 237, 240 (1934) (citation omitted)). A statute may qualify as an unconstitutional special law, for instance, if "there [i]s no reasonable possibility that the classification used in the statute would . . . apply to" the population as a whole. *Fla. Dep't of Bus. and Pro. Regul. v. Gulfstream Park Racing Ass'n, Inc.*, 967 So. 2d 802, 804 (Fla. 2007); *see also Florigrown*, 317 So. 3d at 1117 (discussing that "the closed nature of a class affected by a particular law indicated that the law was special").

But not every statute operating on a closed class constitutes a special law. *Florigrown*, 317 So. 3d at 1117. Indeed, "whether a law is special or general must also take account of its place within a wider regulatory scheme." *Id.* at 1118. Laws that are limited in their direct application are still considered general laws so long as their limited application reasonably relates to a statewide purpose. *Id.* at 1117 (citing *R.J. Reynolds Tobacco Co. v. Hall*, 67 So. 3d 1084, 1090-92 (Fla. 1st DCA 2011)) (finding a law that applied to only five tobacco companies to be a general law because it protected funds used for programs statewide).

In this case, JCKC is challenging a pari-mutuel permitting provision set forth in one section of a fifty-page, forty-two-section gaming bill passed in a 2021 special legislative session. *See* Ch. 21-271, Laws of Fla. The legislation stemmed from a November 2018 amendment to the Florida Constitution prohibiting greyhound racing in Florida, *see* art. X, § 32, Fla. Const., as well as the 2021 Gaming Compact between the State and the Seminole Tribe of Florida, which revamped how gaming would be conducted in Florida. *See* § 285.710, Fla. Stat. Senate Bill 8-A and its companion special session bills did not focus merely on restricting the limited number of permitholders in JCKC's situation. Rather, it revised Florida's gaming regime statewide. As part of this effort, Senate

3

Bill 8-A set forth requirements for greyhound permitholders, jai alai permitholders, and harness horse permitholders to conduct live racing or games, by amending chapter 550, Florida Statutes (Pari-Mutuel Wagering), chapter 551 (Slot Machines), and chapter 849, F.S. (Gambling). The passage of the § 550.054(9)(c) revocation language in Senate Bill 8-A, in particular, reduced the number of pari-mutuel wagering permitholders. It revoked the permits of entities that were non-operative in 2020-21, while allowing operational permitholders to continue offering pari-mutuel wagering. Taking our cue from *Florigrown*, we do not find the § 550.054(9)(c) revocation language from Senate Bill 8-A to be an unconstitutional special law because it subsisted within the Legislature's wider scheme for updating Florida's regulation of gaming to align with a constitutional amendment and the Gaming Compact.

Additionally, because the scheme restricts permits from old and new entrants alike from the pari-mutuel wagering space, it is not a special law. The updated regulatory regime didn't just affect the nine prior-permitted entities situated like JCKC. Rather, the new scheme restricted prospective entrants from the pari-mutuel wagering space too unless they were operational in 2020-2021. *See* §§ 550.054(9)(c), (15)(c), Fla. Stat. Because the new scheme restricts both old and prospective entrants, it is not a special law. *See Dep't of Bus. & Prof'l Regulation v. Classic Mile, Inc.*, 541 So. 2d 1155, 1157 (Fla. 1989) ("A law that operates . . . uniformly upon subjects as they may exist throughout the state . . . is a general law."); *Gulfstream*, 967 So. 2d at 808 ("[A] statute that appears to apply to one situation or area at the time of enactment may still be considered a general law if it could be applied to other situations or areas in the future.").

B.

JCKC next argues that § 550.054(9)(c) violates its due process rights. Under the Due Process Clause, "[n]o person shall be deprived of . . . property without due process of law." Art. I, § 9, Fla. Const. In JCKC's view the State unconstitutionally infringed its property interest in the pari-mutuel gaming permit via a law that wasn't rationally related to a legitimate government interest.

4

JCKC's substantive due process argument fails for at least two reasons. In the first place, we aren't convinced that JCKC has a protected property right at stake in its pari-mutuel wagering permit. Indeed "[t]here is no constitutional right to conduct a gambling business[.]" *Carroll v. State*, 361 So. 2d 144, 147 (Fla. 1978); *Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc.*, 434 So. 2d 879, 881 (Fla. 1983) ("[B]ecause of the nature of the enterprise, authorized gambling, this state may exercise greater control and use the police power in a more arbitrary manner."); *Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1278 (11th Cir. 2005) (describing Florida's pari-mutuel industry as being subject to an "extensive and complex regulatory scheme"). Moreover, chapter 550 states that "[t]he operation of a dog track and legalized pari-mutuel betting at dog tracks in this state is *a privilege* . . . [which] requires strict supervision and regulation in the best interests of the state." § 550.1625(1), Fla. Stat. (2021) (emphasis added); *cf. Solimena v. State*, 402 So. 2d 1240, 1247 (Fla. 3d DCA 1981), review denied, 412 So. 2d 470 (noting that "Florida courts have consistently emphasized the special nature of legalized racing, describing it as a privilege rather than as a vested right") (citing *State ex rel. Mason v. Rose*, 165 So. 347 (1936)). With this privilege, the Legislature vested statutory authority to regulators to revoke or suspend pari-mutuel wagering permits. § 550.054(9)(b), Fla. Stat. (2021) ("The division may revoke or suspend any permit or license issued under this chapter upon the willful violation by the permitholder or licensee of any provision of this chapter . . .."). JCKC has identified no irrevocable promise or guarantee stemming from the State's issuance of its permit that establishes a property right in its permit. And because pari-mutuel betting is a State-granted privilege, "the government does not forfeit its right to withdraw those benefits or qualify them as it chooses." *Bojorquez v. State*, 411 So. 3d 404, 409 (Fla. 2025) (addressing the State's freedom to create and to terminate a taxicab permitting regime without implicating property rights under the Takings Clause); *cf. Leafer v. State*, 104 So. 2d 350, 351 (Fla. 1958) (noting that "a license is not property in a constitutional sense . . . since it confers no right or estate or vested interest, it would seem to follow that it is at all times revocable at the pleasure of the authority from which it emanates") (cleaned up).

A second reason that § 550.054(9)(c) doesn't violate JCKC's due process rights is because it reasonably relates to the permissible legislative goal of regulating gaming. "The test to be used in determining whether an act is violative of the due process clause is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive." *McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998) (quoting *Lasky v. State Farm Ins. Co.*, 296 So. 2d 9, 15 (Fla. 1974). And so, the law violates due process rights only if it fails to bear *any* relationship to a permissible legislative objective. *KOS 11838, LLC v. City of Panama City Beach*, 326 So. 3d 1173, 1177 (Fla. 1st DCA 2021); *Haire v. Fla. Dep't of Agric. & Consumer Servs.*, 870 So. 2d 774, 782 (Fla. 2004). This is a very deferential standard, to which must be added the customary strong presumption of legislative validity. *See, e.g., Fla. Dep't of Revenue v. City of Gainesville*, 918 So. 2d 250, 256 (Fla. 2005) (noting that statutes enacted by the legislature are presumptively constitutional on their face).

JCKC has not met its burden of negating every conceivable rational basis supportive of upholding § 550.054(9)(c). *Id.* In the first place, the Commission's arguments for the permit-revocation law demonstrate a connection to valid legislative objectives. Specifically, the Commission asserts that §§ 550.054(9)(c) and (15)(c) advance the State's strong interest in regulating gaming and in limiting pari-mutuel wagering throughout the state. *See, e.g., Hialeah Race Course v. Gulfstream Park Racing Ass'n*, 37 So. 2d 692, 694 (Fla. 1948); *D'Arcy v. Fla. Gaming Control Comm'n*, 361 So. 3d 935, 937–38 (Fla. 1st DCA 2023). Florida can lawfully limit how much gaming activity there is in the state. *See, e.g., Sanford-Orlando Kennel Club, Inc.*, 434 So. 2d at 881 (noting that "the State of Florida has a legitimate pecuniary interest in racing because of the substantial revenue it receives from pari-mutuel betting. Furthermore, because of the nature of the enterprise, authorized gambling, this state may exercise greater control and use the police power[.]").

The Commission also identifies a second valid legislative goal at stake here, which is administrative efficiency. By voiding permits that were inoperative in 2020-21, and by barring new permits, § 550.054(9)(c) and (15)(c) reduce the need for the State to

6

spend resources processing new license applications and policing entities that hold non-operative permits. Common sense dictates that there is an administrative burden involved with the regulation of pari-mutuel wagering in Florida. In fact, the Bill Analysis and Fiscal Impact Statement for SB 8-A prepared for the Senate's Appropriations Committee indicates that the Division of Pari-mutuel Wagering suspended eight licenses and assessed $19,075 in fines for violations of pari-mutuel statutes and rules in Fiscal Year 2019-20. Reducing the number of regulated entities may allow the Commission to focus more resources on monitoring active pari-mutuel facilities. Because enhancing administrative efficiency is a permissible legislative goal, § 550.054(9)(c) satisfies rational basis scrutiny.

JCKC raises an additional *procedural* due process argument that we also reject. "Procedural due process requires both fair notice and a real opportunity to be heard." *See Key Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 948 (Fla. 2001). The Legislature's passage of § 550.054(9)(c) didn't violate procedural due process because the legislative process itself—involving a special session of the Legislature with its attendant legislative notice- and hearing-related processes— provided due process. *See, e.g., Meola v. Dep't of Corr.*, 732 So. 2d 1029, 1036 n.13 (Fla. 1998) (plurality op.) ("When the government through the legislature acts against a whole class of people, the people as a whole have the ability to remedy the situation by approaching their lawmakers, electing other more desirable lawmakers, circulating petitions, etc. In other words, other due process options are available."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (noting that legislative process had given plaintiffs "all the process that is due"). Furthermore, the Commission supplied a point of entry to JCKC here to challenge the revocation action in an administrative proceeding. The Commission sent JCKC a notice of intent to revoke its permit, which JCKC then challenged administratively, before bringing this case in circuit court and appealing to this court. All to say, JCKC has not established a procedural due process claim here.

C.

7

Finally, we also reject JCKC's impairment of contract argument. The Florida Constitution says that "[n]o . . . law impairing the obligation of contracts shall be passed." Art. I, § 10, Fla. Const. But here JCKC failed to identify a contract impaired by the passage of § 550.054(9)(c). The record did indicate that JCKC had discussed selling its permit with a potential buyer leading to a letter of intent. But no contract was entered via the letter. *See Irby v. Mem'l Healthcare Grp., Inc.*, 901 So. 2d 305, 306 (Fla. 1st DCA 2005) (holding that a letter that merely presents a proposal without essential terms is not a contract). The trial court did not err in rejecting JCKC's impairment of contract argument.

## II.

For these reasons, the judgment of the trial court is AFFIRMED.

ROBERTS and BILBREY, JJ., concur.

––––––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––––––

E. Dylan Rivers of Ausley & McMullen, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Elizabeth Ann Teegen, Assistant Attorney General; Jeffrey Paul DeSousa, Acting Solicitor General, and Jason J. Muehlhoff, Chief Deputy Solicitor General, Tallahassee; Elina Gonikberg Valentine of the Florida Gaming Control Commission, Tallahassee; Noah Temple Sjostrom of Coffey Burlington, Miami; and David Matthew Costello of Boies Schiller Flexner LLP, Fort Lauderdale; for Appellee.